EVANS et al. v. SUESS ORNAMENTAL GLASS CO. et al.

(Circuit Court, N. D. Illinois. February 8, 1897.)

PATENTS FOR INVENTIONS—GLASS CHIPPING—NOVELTY.

The Evans patent, No. 494,999, for an alleged improvement in the art of chipping glass, consisting in applying to clear glass a pattern of oiled paper or other flexible material, then submitting the glass and pattern successively to the sand-blast and the hot-chipping compound, and finally removing the pattern and hot-chipping compound together, is void for want of novelty, in view of the prior state of the art.

In Equity. Suit by Samuel Evans and others against the Suess Ornamental Glass Company and others.

Charles F. Brown, for complainants.
Coburn & Strong, for defendants.

GROSSCUP, District Judge. The bill is to restrain infringement of letters patent No. 494,999, issued to Evans, as the inventor, and Rawson, as assignee of one-half interest, under date of April 4, 1893. The patent relates to an alleged new and useful improvement in the process of chipping glass. The art of ornamenting glass either by sand-blasting or chipping is of some years' duration. Sand-blasting seems to have come first, and was effected by exposing the clear glass to the action of sand blown in against it by strong currents of air. The glass was thus made semi-opaque, and answered many purposes, such as interior doors, partitions, etc. In time, the desirability of further ornamentation of such glass led to this further treatment: The clear glass was covered with a varnish, or with paper by means of some adhering material, on which were cut out patterns, such as were wished, passing the glass with such patterns through the sand-blast, with the result that the portions uncovered were mottled or blasted, while the portions covered remained clear. The chipping of glass is, in some respects, an improvement upon sand-blasting, and was brought about by a treatment as follows: The clear glass was first sand-blasted, then spread over its roughened surface with warm glue. Glue drying under heat contracts, while glass under heat expands. Thus, the two materials, in adhesion to each other, had, under heat, the opposite tendencies of contraction and expansion. This results in portions on the surface of the glass giving way, leaving it with a chipped or mottled appearance.

The object of the complainants' patent is to apply to this art, thus developed, such treatment as will chip, as the glass had formerly

been sand-blasted, into letters or ornamental portions. The result attained is that the surface of a sheet of glass may be partially chipped, partially sand-blasted, and partially left clear, under any pattern desired; the several portions being separated from the others by clear lines of demarcation. The so-called "invention" consists in applying to the clear glass a pattern of oiled paper or other flexible material, calculated to resist the action of the sand-blasting process, as well as the action of the hot-chipping compound, such as hot glue; then submitting the glass with the pattern thereover successively to the sand-blast and the hot-chipping compound; and then raising the pattern from the glass, together with the hot-chipping compound thereover, leaving the balance of the glass over which the pattern is not spread to be chipped by the compound in the usual way.

The claims are as follows:

"(1) The process of chipping glass, which consists in covering the surface of the glass with a thin film of soap, in applying a pattern thereover adapted to resist the action of a sand-blast process, of removing the film of soap exposed in the openings of the pattern, in subjecting the glass with the pattern thereon to the sand-blast process, in applying a glass-chipping compound in a liquid condition to the surface of the glass and the pattern thereon, in lifting the pattern off the glass, together with the chipping compound thereover, while such chipping compound is in a liquid condition, and in allowing the chipping compound to dry in the ordinary way, substantially as described.

"(2) The process of chipping glass, which consists in covering the surface of the glass with a coating adhering to the glass sufficiently well to form a means of attaching a flexible pattern thereover, and adapted to form a coating protecting the glass from the action of a glass-chipping compound when interposed between the glass and such glass-chipping compound, in applying a flexible pattern thereover adapted to resist the action of the sand-blast process, in subjecting the glass with the pattern thereon to the action of the sand-blast process, in coating the entire surface of the glass with a glass-chipping compound in a liquid condition, in removing the flexible pattern from the glass, together with the glass-chipping compound thereover, while the glass-chipping compound is in a liquid condition, and in allowing the glass-chipping compound to dry in the ordinary way, substantially as described."

It is difficult to understand in just what respect the novelty of the process is claimed to reside. The general art is old. The use of soap or other coating suited to holding the pattern to the glass is not a patentable element. Its office here is the same as its office in many other arts. The mere application of a pattern, independently of its material, is derived from the previous art of ornamenting glass in process of sand-blasting. The removing of the film of soap or other material is certainly not new. The application of the chipping compound was in the previous art, and its application in a liquid condition seems necessarily in such art. The lifting of the pattern off the glass, together with the chipping compound thereover, was also done in the previous sand-blasting ornamentation. I can only see two possible features of novelty in this process,—the material of the pattern, and the condition of the chipping compound when the pattern is lifted up. It was not seriously contended that the application of oiled paper to this process was a departure involving inventiveness. Many other materials will answer the same purpose as oiled paper, and, what is more, the claim is not resting

upon oiled paper, but upon any material suited to resist the action of the sand-blast process. This is too broad to cover any particular material, and is so broad that it covers material formerly used in patterns applied to glass undergoing the sand-blast process.

Much stress at the argument was laid upon the contention that the chipping compound or glue was in just such condition of self-cohesion that when the pattern was lifted up, cutting through the glue substance, the glue would neither be so liquid as to run over the adjoining space, nor so solid as to break along irregular lines. This is, at most, the discovery of a suitable condition for the lifting of a pattern, and is not the description of any new material, or new method of making such material, or new way of treating such material. Neither do I think that it evinces invention. The pattern being on the glass underneath the warm glue, and the want being seen, namely, a clear-cut edge, almost any mechanic would conclude that a condition of either too much fluidity or too much solidity would impair the result.

I refrain from holding whether, if all the claims of the complainant were assumed, a process could be sustained under the Locomotive Works Case, 15 Sup. Ct. 745, for the reason that, in accordance with the foregoing conclusion, such opinion is immaterial. The bill will be dismissed.