EVANS et al. v. SUESS ORNAMENTAL GLASS CO. et al.

(Circuit Court of Appeals, Seventh Circuit. November 8, 1897.)

No. 397.

1. PATENTS—NOVELTY AND INVENTION—GLASS CHIPPING.
    The Evans patent, No. 494,999, for alleged improvements in processes of chipping glass,' consisting in covering the surface of the glass with a film of soap or other coating, and applying thereto a pattern of flexible material, then submitting the glass and pattern successively to the sand blast and the hot chipping compound, and finally removing the pattern and hot chipping compound while the compound is in a liquid condition, is void for want of novelty and invention in view of the prior state of the art. 81 Fed. 198, affirmed.

2. APPEAL—ASSIGNMENTS OF ERROR—OPINION OF COURT.
    Assignments of error which are predicated upon the opinion of the court, or on reasons given by the court for its ruling or decree, are not available.

Appeal from the Circuit Court of the United States for the Northern District of Illinois, Northern Division.

This was a suit in equity by Samuel Evans and Charles L. Rawson against the Suess Ornamental Glass Company, John B. Suess, Max Suess, and Emily Suess for alleged infringement of a patent for improvement in processes of chipping glass. The circuit court dismissed the bill, holding that the patent was void for want of novelty in view of the prior state of the art. 81 Fed. 198. From this decree complainants have appealed.

The appeal in this case, brought to obtain an injunction and other relief on account of alleged infringement of letters patent of the United States, No. 494,990, granted April 4, 1893, to Samuel Evans, for improvements in processes of chipping glass, was dismissed for want of equity. Infringement is charged of the first and second claims of the patent, which read as follows: "(1) The process of chipping glass, which consists in covering the surface of the glass with a thin film of soap, in applying a pattern thereover adapted to resist the action of a sand-blast process, of removing the film of soap exposed in the openings of the pattern, in subjecting the glass with the pattern thereon to the sand-blast process, in applying a glass-chipping compound in a liquid condition to the surface of the glass and the pattern thereon, in lifting the pattern off the glass together with the chipping compound thereover while such chipping compound is in a liquid condition, and in allowing the chipping compound to dry in the ordinary way; substantially as described. (2) The process of chipping glass, which consists in covering the surface of the glass with a coating adhering to the glass sufficiently well to form a means of attaching a flexible pattern thereover, and adapted to form a coating protecting the glass from the action of a glass-chipping compound when interposed between the glass and such glass-chipping compound, in applying a flexible pattern thereover adapted to resist the action of the sand-blast process, in subjecting the glass with the pattern thereon to the action of the sand-blast process, in coating the entire surface of the glass with a glass-chipping compound in a liquid condition, in removing the flexible pattern from the glass together with the glass-chipping compound thereover while the glass-chipping compound is in a liquid condition, and in allowing the glass-chipping compound to dry in the ordinary way; substantially as described." The opinion of the court below, reported in 81 Fed. 198, after reviewing briefly the state of the prior art, and quoting the claims in question, concludes as follows: "It is difficult to understand in just what respect the novelty of the process is claimed to reside. The general art is old. The use of soap or other coating suited to holding the pattern to the glass is not a patentable element; its office here is the same as its office in many other arts. The mere application of a pattern, independently of its material, is derived from the previous art of ornamenting glass in process of sand-blasting. The removing of the film of soap or other material is certainly not new. The application of the chipping compound was in the previous art, and its application in a liquid condition seems necessarily in such art. The lifting of the pattern off the glass, together with the chipping compound thereover, was also done in the previous sand-blasting ornamentation. I can only see two possible features of novelty in this process: the material of the pattern, and the condition of the chipping compound when the pattern is lifted up. It is not seriously contended that the application of oiled paper to this process was a departure involving inventiveness. Many other materials will answer the same purpose as oiled paper; and, what is more, the claim is not resting upon oiled paper, but upon any material suited to resist the action of the sand-blast process. This is too broad to cover any particular material, and is so broad that it covers material formerly used in patterns applied to glass undergoing the sand-blast process. Much stress at the argument was laid upon the contention that the chipping compound or glue was in just such condition of self-cohesion that when the pattern was lifted up, cutting through the glue substance, the glue would neither be so liquid as to run over the adjoining space, nor so solid as to break along irregular lines. This is, at most, the discovery of a suitable condition for the lifting of a pattern, and is not the description of any new material, or new method of making such material. Neither do I think that it evinces invention. The pattern being on the glass underneath the warm glue, and the want being seen, namely, a clear cut edge, almost any mechanic would conclude that a condition of either too much fluidity or too much solidity would impair the result. I refrain from holding whether, if all the claims of the complainant were assumed, a process could be sustained under the Risdon Iron & Locomotive Works Case, 158 U. S. 68, 15 Sup. Ct. 745, for the reason that, in accordance with the foregoing conclusion, such opinion is immaterial." The assignment of errors contains numerous specifications, each of which relates to a quoted part of the court's opinion, but that the court erred in dismissing the bill is not alleged. There has been no appearance here for the appellee.

Charles Turner Brown, for appellants.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

We are not able to perceive that the conclusion of the circuit court was erroneous. The chief feature of novelty, as asserted in the briefs for appellants, and especially at the oral argument, was, in the language of the second claim, "in removing the flexible pattern from the glass, together with the glass-chipping compound thereover, while the glass-chipping compound is in a liquid condition." That step in the process is fairly anticipated in the prior art. In the Shaw patent, No. 15,532, which was for a method of lettering and ornamenting glass, patterns, preferably of tin-foil or lead-foil, were placed upon the back surfaces of plates of glass coated with the white of eggs, by which the patterns were held, while over the whole surface of the patterns and glass was brushed the color desired for the background, after the drying of which the patterns were removed, "so as to leave the designs with clean surfaces and smooth and sharply defined outlines." And so in patent No. 154,032, granted to Carl Frederici, in the year 1873, for improvement in processes of preparing glass for etching, a pattern upon a pane of glass to which a thin layer or film of beeswax, or equivalent material, has been applied, is stripped off, after the film is set, in such a manner that the parts from which the pattern has been removed may be exposed to the sand-blast or etching liquid, while the remainder of the surface will be protected by the wax or other material, by which means, according to the specification, it is practicable to produce designs with sharp and clearly defined contours. The asserted distinction that in the processes described in those patents the paint is said to be dry, and the film or wax to be set, before the patterns are to be lifted, while in the process of the Evans patent the glue or chipping compound is to be in a liquid state when the pattern is removed, is not important, or, to say the least, not controlling, upon the question of invention. "Dry," "set," and "liquid," as used. are relative terms, and signify no more than sufficiently dry, sufficiently set, or sufficiently liquid, as determined by practice and experiment, to contribute most effectively to the desired result. When asked, in reference to the patent in suit, how rapidly does the glue set, an expert witness for the appellants answered that that could not be stated accurately, since the time varies greatly, depending upon the temperature, and upon the amount of moisture in the atmosphere; that the extreme ranges of time, he thought from observation, were from 5 minutes to 25 minutes. Infringement of the earlier processes certainly could not have been evaded simply by removing the patterns before the paint was dry, or the wax set; nor of the patent in suit by postponing the removal until the chipping compound had ceased to be, in a strict sense, liquid. See, also, letters patent No. 63,328, granted on March 26, 1867, to C. C. Strumme, and No. 405,283, granted on June 18, 1889, to Thomas J. Thompson.

We are constrained to repeat and emphasize the observation that an assignment of error which is predicated upon the opinion of the court, or upon a reason given by the court for its ruling or decree, is not available. Caverly's Adm'r v. Deere & Co., 24 U. S. App. 617, 13 C. C. A. 452, and 66 Fed. 305; Russell v. Kern, 34 U. S. App. 90, 16 C. C. A. 154, and 69 Fed. 94; Clark v. Deere & Mansur Co., 25 C. C. A. 619, 80 Fed. 534. It is something done by the court,—a ruling, judgment, order, or decree,—and not a reason therefor, which may be assigned as error. A sufficient assignment in this case would have been simply that the court erred in dismissing the bill. Though not required to do so, we have given the same attention to the merits of the case as if that had been the specification of error. To do this has involved more than the usual labor, especially in the study of the expert testimony adduced on either side. Our conclusion is that the judgment below should be affirmed.