RAWSON et al. v. WESTERN SAND BLAST CO. et al.*

(Circuit Court of Appeals, Seventh Circuit. October 7, 1902.)

No. 850.

1. PATENTS—VALIDITY—PROCESS FOR CHIPPING GLASS.

The Evans patent, No. 494,999, for a process for chipping glass, *held* void for lack of novelty and invention, in view of a prior decree between complainant and a different defendant so holding, which was affirmed on

---

* Rehearing denied November 15, 1902.

appeal, and the supreme court having refused to grant a writ of certiorari to review such decision.

**2. SAME.**

The Thompson patent, No. 405,283, for a process for chipping glass, *held* entitled only to a narrow construction in view of the prior art, and as so construed not infringed.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

James H. Raymond and Otto R. Barnett, for appellants.

John W. Munday, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. Appellants filed their bill to enjoin appellees from infringing letters patent No. 405,283, June 18, 1889, to Thompson, and No. 494,999, April 4, 1893, to Evans, both for processes of chipping glass. The circuit court held that the Evans patent was void, and that the Thompson patent was not infringed.

Some years ago these appellants brought suit in the circuit court for the Northern district of Illinois against the Suess Ornamental Glass Company for infringement of the Evans patent, and were defeated on the grounds that the process lacked novelty and invention. 81 Fed. 198. This court affirmed the decision, and denied a rehearing. 28 C. C. A. 24, 83 Fed. 706, 30 C. C. A. 367, 86 Fed. 779. The supreme court refused to grant a writ of certiorari. 171 U. S. 687, 18 Sup. Ct. 942. Though the former case might not prevent a renewed inquiry into the merits of the Evans patent, we are persuaded that the pronouncements therein, in view of the supreme court's denial of appellants' application for a writ of certiorari, should, in the interest of faith in the stability of judicial decisions, be adhered to by us as the law of the patent.

Thompson describes his invention and makes his claim therefor as follows:

"In carrying out my process I first cover the part of the glass to be decorated with a layer of asphaltum or analogous adhesive matter, and on this I place a covering sheet of tin foil, paper, or the like. A mere covering of paint will answer the purpose. The desired pattern or design is next laid out on this covering, and the covering is cut out in the desired outline with a sharp instrument. The parts of the covering between the cuttings where the glass is to be chipped are now removed, or, if desired, the covering may at once apply only to the part of the glass which is not to be chipped. A layer of glue or other contracting substance or material is next spread over the glass so exposed, and may also extend over the covering. If the chipping process were now to be carried out in the usual manner, the glue would chip pieces of glass off beneath the covering. To avoid this I cut through the glue with a sharp knife along the margin of the space to be chipped and roll or strip off the glue while in a jellied state from the parts not to be chipped, but I do not cut any crease into the glass itself. The outline of the design or pattern being thus cut through the glue, the chipping may be proceeded with by subjecting the glass and its sharply defined glue cover to heat in the usual manner. If any part or parts of the glass are to be treated with acid or sand blast, this can be done either before or after the chipping process by first removing the covering where desired and then applying the acide or sand blast. By my improved process I am enabled to produce chipped glass in a simple and effective manner and without the glass at the sides of the design being affected by the chipping process. I do not claim

to have invented the process of preparing glass for chipping which consists in applying glue to the glass where the same is to be chipped, as shown in patent No. 63,328. Having now described my invention, what I claim is: The process of preparing glass for chipping which consists in covering the glass where the same is not to be chipped with a covering of paint or varnish, in then covering the glass where it is to be chipped with a layer of glue, and in then cutting through the glue along the edge of the pattern to be chipped, as specified."

The process used by appellees is this: (1) They cover a plain sheet of glass with tin foil attached to the surface by a thin film of wax; (2) with a needle point they cut lines through the tin foil to correspond with the desired pattern; (3) they cover the whole surface with a coating of wax varnish; (4) they strip off the portion of the tin foil that covers the part to be chipped by pulling it up through the wax varnish; (5) they sand-blast the exposed part of the glass; (6) they brush warm liquid glue through the adhering stencil, and, incidentally, upon it; (7) they strip off the stencil by pulling it up through the glue, leaving a side wall of glue exposed down to the glass along the lines within which the glass is to be chipped; and (8) they allow the glue thus left on the glass to harden, which has the effect of chipping the glass within the lines of ornamentation.

Appellees claim that they were doing only what was open to the world by reason of the prior art as exhibited in letters patent No. 15,532, August 12, 1856, to Shaw, No. 63,328, March 26, 1867, to Stremme, and No. 154,032, August 11, 1874, to Frederici, while appellants contend that the Thompson patent covers the primary discovery of the art of controlling the chipping within strict lines of ornamentation, by means of cutting away the surplus glue, enabling the glue to harden at the surface of the glass first along the lines of the intended ornamentation, thus causing the chipping invariably to take place from the lines and within the design, and that this cutting for this purpose is infringed by appellees' process of stripping a stencil up through the glue while it is of such consistency as to leave proper side walls.

Stremme said, among other things:

"The nature of my invention consists in applying to the ground surface of glass or other similar material a warm solution of glue or other sticky matter, such as paste, mucilage, white of eggs, etc., which, in the process of drying and hardening, contracts, and thus detaches and brings away, when removed, particles from the surface of the glass where applied, leaving the part which is covered to look like ice or frozen snow, thus producing ornamental figures or designs of any description desired upon glass. * * * A coat of varnish is applied to the whole surface of the glass except that embraced within the figure (to be chipped). * * * The mode here described may be simplified to a great extent by using patterns in applying the varnish, either in the manner of brushing through or printing on the glass the protecting varnish, which latter method would also be applicable in certain cases, even in transferring the glue, when the varnish would be dispensed with altogether."

The nature, scope, and effect of the Shaw and Frederici patents were thus stated by this court in the Suess Ornamental Glass Co. Case:

"In the Shaw patent, No. 15,532, which was for a method of lettering and ornamenting glass, patterns, preferably of tin foil or lead foil, were placed upon the back surfaces of plates of glass coated with the white of eggs, by

which the patterns were held, while over the whole surface of the patterns and glass was brushed the color desired for the background, after the drying of which the patterns were removed, 'so as to leave the designs with clean surfaces and smooth and sharply defined outlines.' And so in patent No. 154,032, granted to Carl Frederici in the year 1874, for improvement in processes of preparing glass for etching, a pattern upon a pane of glass to which a thin layer or film of beeswax, or equivalent material, has been applied, is stripped off, after the film is set, in such a manner that the parts from which the pattern has been removed may be exposed to the sand blast or etching fluid, while the remainder of the surface will be protected by the wax or other material, by which means, according to the specification, it is practicable to produce designs with sharp and clearly defined contours." 28 C. C. A. 24, 83 Fed. 708.

"Those patents cannot be excluded from consideration because they belong to the art of (painting or) sand-blasting (designs upon glass). * * * The lifting of the pattern, and thereby cutting a film of glue, is not different from the lifting of a pattern, and thereby cutting a film of beeswax, paint, paste, mucilage, white of egg, or other semi-fluid or viscous substance." 30 C. C. A. 367, 86 Fed. 782.

The infringement in this case, if any, consists in the seventh and eighth steps of appellees' process, as hereinabove set forth. But the statement and application of the prior art as made by this court in the case quoted from show that appellees were doing only what was free to all. To give Thompson's patent the liberal construction contended for, and to hold that he made the mother invention in the art of controlling the chipping of glass within strict lines, would require us to give a different interpretation and effect to the prior art. To do this would virtually destroy the foundations on which rests the former decision respecting the Evans patent. That appellees appreciated this is probably shown by their joinder of the two patents in the present suit. To hold the Evans patent void, and in the same breath to give the Thompson patent a construction that repudiates the reasons for holding the Evans patent invalid and in effect revives that patent, do not consist. With Thompson's patent narrowly construed, appellees do not infringe.

For himself, the writer may be permitted to say that if the subject of the processes for controlling the chipping of glass within strict lines' were res integra, and assuming, what the evidence seems to establish, that the chipping will almost invariably extend over the line, unless the surplus glue is cut away, thus causing the chipping to begin at the line and extend within the design, he would be disposed to hold that the Stremme patent for the chipping of glass did not foreshadow or suggest the Thompson idea; that the Shaw and Frederici patents, respecting the arts of painting and sand-blasting designs upon glass, in which never arose the problem of preventing the paint or sand-blast from cracking or chipping the glass beyond the line and under the stencil, are not applicable to the art of controlling the chipping of glass to a line; and that the Thompson patent covered a primary invention in a particular art, on which the Evans process was a valid improvement. But, in consideration of the supreme court's action on the application for a writ of certiorari in the Evans Case, he believes that these questions should not be opened up either at circuit or here.

The decree is affirmed.