### McKINNON CHAIN CO. v. AMERICAN CHAIN CO.

(Circuit Court of Appeals, Third Circuit. September 27, 1920. Rehearing Denied November 27, 1920.)

No. 2522.

**Patents ☞328—1,023,126, for chain-making machine, void.**
   The Coulter patent, No. 1,023,126, for a wire chain machine for automatically forming chain links for electric welding, *held* void on the ground that it was issued to Coulter as sole inventor, whereas the machine was the joint conception of Coulter and one Hoff, each of whom contributed elements of the combination embodied therein.

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Suit in equity by the McKinnon Chain Company against the American Chain Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 259 Fed. 873.

Mitchell & Staples, of Buffalo, N. Y. (Frederick P. Fish, of Boston, Mass., and Louis Provost Whitaker, of New York City, of counsel), for appellant.

Frederick S. Duncan, Oscar W. Jeffery, and John H. Hilliard, all of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

WOOLLEY, Circuit Judge. The plaintiff, assignee of Letters Patent No. 1,023,126 granted to James Coulter, charged the defendant with infringement by the manufacture and use of machines embodying the invention of the patent. The claims in suit are 2, 3, 4, 5, 7, 9, 10, 11,

15, 20, 21, 26, 29, 30, 36, 37, 38, 39, 43, 45, 46, 47, 48 and 49. The District Court, finding an implied license in favor of the defendant, and, therefore, no infringement, dismissed the bill. 259 Fed. 873.

By this appeal, the plaintiff has charged error in the court's finding of implied·license, on which alone the court based its finding of non-infringement, and has assailed the decree broadly—lest it be held good on some other ground—by replying to all the defenses made at the trial and not passed on by the trial court. Crown Cork & Seal Co. v. Aluminum·Stopper Co., 108 Fed. 848, 48 C. C. A. 72; Corning v. Troy Iron and Nail Factory, 15 How. 451, 14 L. Ed. 768; Patent Clothing Co. v. Glover, 141 U. S. 560, 12 Sup. Ct. 79, 35 L. Ed. 858; Woodward v. Boston Lasting Machine Co., 63 Fed. 609, 11 C. C. A. 353; Clark v. ·Deere & Mausur Co., 80 Fed. 534, 25 C. C. A. 619; Evans v. Suess Glass Co., 83 Fed. 706, 28 C. C. A. 24; Walker on Patents, § 655. These defenses, in addition to that of implied license, are the invalidity of the patent because of lack of patentable invention, or because invention, if any, was that of another, or was the joint invention of the patentee and another; laches and acquiescence in defendant's use of the invention for twelve years; and plaintiff's lack of title to the patent.

The position of these litigants in the industry to which the subject matter of the patent relates, and also the position of the patent, in that it substantially dominates the industry, have caused us to give this large record and the elaborate briefs careful and labored consideration and have induced us to decide the case on·that one of the several issues which we regard as fundamental. While the evidence·might perhaps sustain a finding of implied license, we hesitate to base our decision on such finding, for it is quite doubtful that the parties to the transaction out of which the invention arose came to an express agreement concerning its future use (though doubtless the defendant thought they had), and it is debatable whether the·circumstances of the transaction, including the relation of the designer (later the patentee) of the machine to the corporation that contracted for its manufacture and sale to the defendant, were such as can validly raise a contract of license by implication. We shall therefore limit our discussion and confine our decision to that issue which we think is free from serious dispute.

Assuming without deciding that the subject-matter of the patent involves invention, the controlling issue, we think, is whether the invention was the sole invention of Coulter, the sole patentee, or·was the joint invention of Coulter and Hoff, the latter being superintendent of one of the defendant's mills.

This issue, invoking of course the law of joint invention, is mainly one of fact, and turns primarily on the evidence.

Of this evidence we shall give only a summary (referring to the opinion of the trial court at 259 Fed. 873, for a more extended statement), and shall review the evidence in the order in which it was given at the trial.

Upon opening, the plaintiff offered in evidence a duly certified copy of the Letters Patent in suit. From this it appears that the patent·is for a "wire chain machine," referred to throughout the record as an

"automatic chain forming machine," made with especial reference to the manufacture of chains having links to be welded electrically.

In this country prior to the invention of the patent, chains were welded by the hand process of fire welding. At that time there was no art of electric welding of chains. In the development of this new art, it was found that to weld chains electrically two machines were required. One had to do with electric welding proper. But the limitations of a welding machine were such as to require the links of a chain to have certain indispensable yet well defined features, namely; the joint of the link must be at the center of the side, not at the top; the link must be true,—without kinks or nicks; and its ends must be brought together in perfect surface alignment one with the other, avoiding particularly a V-shaped opening, so that the electrodes of the welding machine might properly grip the link and successfully weld it. These requisites demanded by the welding mechanism brought into the new art the other machine. This machine had nothing to do with welding. It had only to do with forming and producing links capable of being electrically welded. Such was the chain forming machine of the patent.

While before the invention of the patent there was in this country, as we have just said, no art of electric welding of chains, there was an old and highly developed art of chain forming machines. To this art the inventor of the machine of the patent—whether Coulter, or Hoff, or both—very naturally and very freely resorted in designing a chain machine to produce links of the form required for electric welding. Indeed, it is admitted by all that the invention is but an addition to or a further movement of mechanism that already existed. As its name denotes, a chain forming machine forms a blank—a wire or rod—into a link of a chain and on closing it threads it with another blank out of which in turn the next link is formed. The machine is composed of highly complicated groupings of slides, levers, arms, rolls, actuated by cams and driving shafts—covered at one time and another by numberless patents—having for their one object the pressure of a blank against a former and the bending of the blank around the former, or partly around it, until the blank takes its form or shape.

The point in an automatic chain forming machine of the prior art at which the inventor departed and began the invention of the patent was, we are inclined to believe, just after the arms or bending elements with grooved end rolls had moved forward simultaneously to bend or U-up a blank part way about a former. The really new thing, it seems to us, was the continued movement of the same arms or bending elements with their grooved end rolls acting successively upon the U'd-up blank (being held firmly with respect to the mandrel), whereby first one end of the blank is bent about the former, and then the other, so that the arms or bending elements by moving successively will not interfere with each other. The product is the true link required for electric welding.

The patentee, however, claims for his invention both the simultaneous and successive arm movements. Though the art we think showed the first, it did not show both movements; at least it did not show both in the same operation. But this is not important, as we shall for the pur-

poses of this case adopt the patentee's contention and regard the invention as comprising both movements in combination. A typical claim of the patent is the following:

"2. In a machine for forming chain, the combination of a former, means for fitting a blank and positioning it so that the center of the blank shall be opposite the center of the former, and devices acting simultaneously to turn each end of the blank partly around the former, said devices thereafter acting successively on the opposite end portions of the blank to roll the ends of the blank toward each other into aligned relation."

The defendant maintains that the details of this construction were obvious and required only ordinary shop skill, and therefore did not amount to invention by whomsoever conceived. But as we are treating the patent as though it involved invention, the question is, that if the invention involved only the successive arm movement, or if, as we shall assume, it involved both the simultaneous and successive arm movements, whose conception was it?

The presumption arising from the patent is that it was the conception of Coulter, the patentee. The only aid to this presumption, aside from his affidavit filed with his application for a patent, in which, as required by statute, he swore that he was "the original, first and sole inventor," is Coulter's own testimony given at the trial that he was the inventor, and that he got none of his ideas from Hoff, with whom he did not talk and whom he did not meet until August, 1905, when the first machine, embodying his completed invention, was ready to be tested; and the testimony of Coulter's draftsman, that he did not see Hoff at Coulter's place of business; and also the testimony of Ryan, corroborating Coulter's testimony as to the date of his first meeting with Hoff, that Hoff came into the office of the Automatic Machine Company, the maker of the machine, in August 1905, and inquired for Coulter, though Coulter was then present and in plain view. There was testimony that neither then nor later did Hoff make claim to the invention. This is the plaintiff's case on its claim that Coulter was the sole inventor.

On this issue, the defendant introduced evidence to prove that another was at least a joint inventor with Coulter. This evidence, greatly compressed, we shall give in narrative form:

Two or three years before the transaction of 1905, culminating in an application by Coulter in that year for the patent in suit, Carleton L. Hoff, superintendent of a chain making plant operated by Standard Chain Company, a corporate predecessor of the defendant, conceived the idea of welding chains electrically. The process of fire welding by manual labor, the only process then in use, was slow, costly and open to labor disturbances. Hoff directed the attention of the officers of his company to the feasibility of electric chain welding and to its desirability over the old method from manufacturing and commercial standpoints. His suggestions met with no favor. Hoff's idea persisted; and, undiscouraged, Hoff persisted through several years in urging his company to adopt his new method, until, early in 1904, its directors, more annoyed than impressed, gave him and Schmidt, its president, permission to develop electric welding of chains on their own

account. Late in 1904, however, the Standard Chain Company became interested and itself took up the matter of introducing in its plants electric welding along the line urged by Hoff. Acting through Schmidt, this company consulted the Thompson Electric Welding Company, then perhaps the foremost concern in the art of electric welding, and learned from it the requirements of a link capable of being welded by electricity, and arranged with it for a welding machine if the Standard Chain Company could succeed in getting a chain forming machine that would turn out links with the requisite features. Hoff set about to get such a machine. Being a practical chain maker, he apparently had well conceived ideas as to how a machine of this kind could be made. With these ideas he went to makers of special machinery and showed them what he wanted in the shape of a chain forming machine and how he thought it should be designed.

He first went to Martin O. Rehfuss, a manufacturer of special machinery, who had made for the Standard Chain Company a chain forming machine known in this litigation as the "Schmidt-Rehfuss machine." This machine, with bending arms moving only part way around the mandrel, Hoff thought, could be so modified by installing his ideas that it would produce the link he desired. He told Rehfuss, and by rough sketch (reproduced by Rehfuss) showed him his ideas, which contemplated arms with grooved rolls to bend a blank entirely around the mandrel by a further forward movement to the end of the blank. Later, in talking with Adolph Rietzel, superintendent of Thompson Electric Welding Company, who was advising him as to the character of the link a welding machine could handle, Hoff explained to him in detail the proposed movements of the Schmidt-Rehfuss chain forming machine when remodeled, namely; that now the "machine was automatic" and that "the blank was partially formed around the mandrel by rolls operated on a slide" and that "we could by a further movement throw these rolls around and close up the abutting ends."

Hoff also consulted Axel H. Nilson, another manufacturer of special machines, and by word, and rough sketch (reproduced by Nilson), showed him his ideas of the proposed mechanism.

Hoff's testimony giving his conception of the mechanism of a machine to meet the requirements of electric chain welding is fully corroborated by the testimony of Rehfuss, Rietzel and Nilson, three disinterested witnesses.

All these transactions, including Hoff's several disclosures of his ideas, occurred before Coulter came into the matter in any way.

Being now alive to the possibilities of electric chain welding, the Standard Chain Company became active. Knowing Coulter and having confidence in his mechanical ability, Garland, vice-president of the company, determined to consult Coulter about the proposed machine. He sent Coulter a letter introducing Hoff. Coulter was then vice-president and mechanical engineer of the Automatic Machine Company of Bridgeport, Connecticut, a concern engaged in the business of designing and building special machinery. Hoff testified that early in 1905, at the instance of Garland, and upon his introduction, he went to see Coulter at Bridgeport, and in an interview of two hours discussed

with him and by rough sketches showed him the requirements of the new chains and of the new chain forming mechanism, describing the suggested alterations in the Schmidt-Rehfuss machine. His testimony in part is as follows:

"I explained to him (Coulter) that in order that we could get proper contact with the electrodes on the ends of the link where he (Reitzel) wanted to apply the electricity immediately back of the joint, that there should be no abrasion in the wire; that in order to accomplish that, that we would use rolls in the machine to roll down the wire. These rolls—I explained to him what we had done with the machine we had in York by rolls to roll the wire around the former; if these rolls were carried further to the point or to the extreme end of the wire of the loop that it was necessary to roll down the wire to perfect the alignment; in order to do that it was necessary to have one roll to advance ahead of the other to—because they would conflict if they would meet at the point of the wire. * * *

"We touched on the cam movements and the location of the parts in relation to each other on the bed-plate, generally, the question of the, I think at that time I think we discussed the question of carrying the blank."

Hoff's testimony as to this early conference with Coulter was corroborated by Garland, then a disinterested witness, who testified that he brought Hoff and Coulter together and that Coulter told him that he had had such a conference with Hoff. Coulter did not contradict Garland; but his testimony previously given that his first interview with Hoff was in August, 1905, was in effect a contradiction of Hoff. Further bearing on the controverted question of a conference between Hoff and Coulter before the meeting between Garland, Schmidt and Coulter in New York (to which we shall refer presently), Rietzel of the Thompson Electric Welding Company testified that after the New York meeting Coulter sent him a blueprint of the proposed chain forming machine, almost, if not entirely, identical with the rough sketches Hoff had submitted to him before Coulter had been called into the matter.

In February, 1905, Garland and Schmidt had an interview with Coulter in New York, at which the problem of the new chain forming machine (without any suggestion of its mechanical solution so far as the record shows) was submitted to Coulter and a contract made through him with the Automatic Machine Company for the manufacture of a machine to do the work required.

Hoff testified to another interview with Coulter at Bridgeport concerning the machine sometime in April or May, 1905, which interview also was contradicted by Coulter's general denial of having met Hoff before August, 1905.

The last meeting between the two men, according to Hoff, and the first meeting, according to Coulter; occurred in August, 1905, when the machine was completed and ready for trial. The machine then contained Hoff's proposed mechanism of simultaneous and successive arm movements, but these movements were around one mandrel. This is pertinent to the issues of sole invention by Coulter and joint invention by Hoff and Coulter, for while Hoff's testimony seems to point to two arm movements around one mandrel, yet it is possible to infer that in the alteration of the Schmidt-Rehfuss machine Hoff contemplated movements around two mandrels. To prove that the idea of a single

mandrel was Coulter's, the plaintiff produced in evidence Coulter's first layout showing two mandrels. (This, in one aspect, rather confirms Hoff's testimony that he had previously conferred with Coulter, and that he had, by reference to the Schmidt-Rehfuss machine, given him his idea of double arm movements.) The plaintiff then introduced Coulter's second layout showing one mandrel. "The main changes" from the first to the second layout, as stated by Coulter himself, "were for making chains in one place rather than in two, two as the original intention, two places, making part and then carrying and finishing in another."

This is the defendant's case on the issue of joint invention, given in colorless outline.

Reference to the issue of infringement is made only to show the origin of the case. On October 4, 1905, following the delivery of the first machine, Coulter applied for a patent. Letters Patent, granted April 16, 1912, came to the plaintiff through sundry assignments. In the meantime the Standard Chain Company applied to the Automatic Machine Company for more machines. The latter company refused to build them because of the outstanding assigned application for a patent. Whereupon the Standard Chain Company, the defendant's predecessor, and later the defendant itself, manufactured and used more than one hundred machines of the design of the original. If the patent is valid, clearly it is infringed.

The evidence comprising the defendant's story of Hoff's part in the invention was not controverted by the plaintiff in rebuttal, nor in its case in chief, except in the limited measure shown in the evidence we have reviewed.

From this evidence we make certain findings of fact. One is, that Hoff was the first to conceive the principle of simultaneous and successive arm movement mechanism. Another is, that later Coulter became possessed of the same idea, either from Hoff or from himself. These facts, on the evidence, are not open to serious dispute. That Coulter got the idea from Hoff is established, we think, by the clear preponderance of the direct testimony aided by all the probable inferences of the transaction, well within the rule requiring evidence impugning a patent to be clear, unequivocal and convincing. Schwarzwaelder Co. v. City of Detroit (C. C.) 77 Fed. 886; Manton-Gaulin Mfg. Co. v. Dairy Machinery & Construction Co. (D. C.) 238 Fed. 210, 215; affd. 247 Fed. 317, 159 C. C. A. 411; United States v. Bell Co., 167 U. S. 224, 251; Eastern Paper Bag Co. v. Continental Paper Bag Co. (C. C.) 142 Fed. 479, 500. If by chance this is not true, and if it happened that both Hoff and Coulter, on being presented at different times with the same problem of mechanics, conceived independently and at once the same solution, then we have something more than a singular coincidence; we have a situation which would induce us to believe that the solution must have been obvious to anyone skilled in the art of chain forming machines and did not involve invention at all.

Having been shown by Hoff the function of the double movement of arms "to roll the wire around the former"—evidently the capital idea of the machine, for without it the machine will not work—the

remaining question is, whether Coulter in taking Hoff's conception and adapting it to a single mandrel—which, though it is not at all certain, we shall assume was solely Coulter's idea—made him the sole inventor of the machine.

Not having lost sight of the fact that the patent is for a combination, we can conceive that if Hoff's simultaneous and successive arm movements had been a part of the prior art, Coulter might have taken them, and, adapting them to a single mandrel, might have made in that combination a new invention. There invention would have resided solely in the combination, in no degree in its elements, and Hoff might not be heard to complain. But Hoff's conception, which he gave Coulter to develop mechanically, was not then a part of the art, either prior or present. It had never been reduced to practice; it had not been embodied in mechanical form; it had not emerged from its mental development. Hoff saw with his mind's eye a picture of arms with grooved rolls traveling simultaneously and then successively on a blank around a mandrel, moved and guided by the usual chain forming mechanism of arms, levers, and cams. This picture was in his mind; it was not in the art; and it did not get into the art until the machine embodying it came out of the shop. The machine then contained in combination Hoff's conception and what we have assumed was Coulter's conception, so combined and interrelated that the presence of each was indispensable to the functioning of the other, for without either the machine would not work.

As both Hoff and Coulter had at one time—the crucial time—worked together for a common end, which was finally accomplished by the contributions and united efforts of both, we are of opinion, after applying familiar law to the facts, that the invention was the invention of both, and was, therefore, joint invention. Walker on Patents, section 46; 1 Robinson on Patents, sections 398, 399, and cases in footnotes; Worden v. Fisher (C. C.) 11 Fed. 505, 506, 508; Barrett v. Hall, 1 Mason, 447, 472, Fed. Cas. No. 1,047; Thomas v. Weeks, 2 Paine, 92, Fed. Cas. No. 13,914; Consolidated Bunging Apparatus Co. v. Woerle (C. C.) 29 Fed. 449; Thropp & Sons Co. v. De Laski & Thropp Circular Woven Tire Co., 226 Fed. (C. C. A. 3rd) 941, 947, 949, 141 C. C. A. 545.

On this finding it follows that the award of the patent to Coulter as the sole inventor was unlawful, and that, in consequence, the patent, as to the claims in suit, is invalid. On this ground the decree below dismissing the bill is affirmed.