[No. B121194. Second Dist., Div. Four. Feb. 3, 2000.]

DAN E. BUTCHER et al., Plaintiffs and Appellants, v.
TRUCK INSURANCE EXCHANGE et al., Defendants and Respondents.

**COUNSEL**

Haight, Brown & Bonesteel, Roy G. Weatherup, Caroline E. Chan, and Mark B. Aldrich for Plaintiffs and Appellants.

Cooper, Kardaras & Scharf, Brand L. Cooper; Greines, Martin, Stein & Richland, Irving H. Greines and Feris M. Greenberger for Defendant and Respondent Truck Insurance Exchange.

Hawkins, Schnabel, Lindahl & Beck, Laurence H. Schnabel and Rena Denton Stone for Defendant and Respondent Don P. Meyer.

## OPINION

DAU, J.*—Insureds, facing suit for malicious prosecution, turned to their insurer for a defense, having years before instructed the insurer's agent to duplicate the coverage of a policy containing that protection. When the defense was denied, because the coverage was not in the policy that was issued and later renewed, the insureds sued. Insureds produced evidence that the insurer's agent misled them into believing he had delivered a policy duplicating the coverages (including coverage for malicious prosecution) of an insurer whose policy was not being renewed. The trial court granted summary judgment in favor of the insurance company and its agent, on the basis that a prior judgment in an action in federal court between insureds and the insurer issuing the prior policy precluded insureds' claim. This appeal presents three basic issues.

1. What is the preclusive effect in this action of a prior federal court judgment in a coverage action between the insurer whose policy was not being renewed and these insureds? In the prior action a federal district court based its judgment on two grounds: first, the policy's malicious prosecution provision did not cover the malicious prosecution claim against insureds, and second, the offense occurred outside the insureds' policy period. The court of appeals affirmed the judgment, upholding the second ground and declining to address the first. The specific issue presented is whether the federal judgment is conclusive on insureds as to the first ground.

2. Will an action lie for failure to deliver agreed-upon coverage, where an agent misleads the insureds into believing they received the policy requested, and the insureds do not read the policy? Related to this issue is whether the form of the prior policy, providing malicious prosecution coverage, obligates the insurer to defend and indemnify a loss caused by the wilful act of the insured.

3. Where an agent negligently omits to obtain the agreed-upon coverage and delivers a policy in 1986, and insureds do not bring suit until 1993, which is just after they are sued and the insurer refuses to defend, have statutes of limitations run on insureds' claim for reformation and their claims based on negligence?

We discuss these issues in the order set out above and conclude as follows: where a court of first instance makes its judgment on alternative grounds and the reviewing court affirms on only one of those grounds,

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

declining to consider the other, the second ground is not conclusively established; there is a triable issue of material fact whether the agent misled the insureds, which precludes summary judgment, and, if the trier of fact finds the insureds were misled by the agent, the form of the prior policy provides coverage for the malicious prosecution claim and would entitle insureds to a defense, but not to indemnity; and the statute of limitation for the negligence claims does not begin to run until the insurer refuses to defend and, for the reformation claim, until insureds discover the facts constituting the mistake. Accordingly, we reverse.

## I

### FACTUAL AND PROCEDURAL BACKGROUND

In 1985 respondent Don P. Meyer, an agent of respondent Truck Insurance Exchange (Truck) contacted appellant Dan E. Butcher (Butcher) to solicit his insurance business. Butcher gave Meyer a copy of his current policies that were not being renewed and instructed Meyer to secure the same coverage but at higher limits.

A policy that Butcher provided to Meyer, issued by West American Insurance Company (West American), included "personal injury" coverage, which the policy defined as injury arising out of, among other things, malicious prosecution.[1] According to Butcher, Meyer said he could obtain the coverage Butcher wanted, and he later came to Butcher's office with the policy he obtained from Truck, indicated it had the same coverage as that provided by the West American policy, and never told Butcher he was unable to get the personal injury coverage.

Meyer's description about how he procured and presented the Truck policy differs substantially from Butcher's, although he agreed that Butcher said he wanted to duplicate his existing coverage. Meyer was aware that Truck's underwriting practice was not to provide personal injury coverage to contractors, such as Butcher, and he presented the policies Butcher had provided to Truck's underwriter, Robert White, for review. Meyer asked

---

[1] The personal injury portion of the insuring agreements of the West American policy provides: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury . . . to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent[.]" The policy defines "personal injury" as "injury arising out of one or more of the following offenses committed during the policy period: . . . false arrest, detention, imprisonment or malicious prosecution. . . ."

White whether he would make an exception in the Butchers' case and duplicate the West American coverage. White declined to write personal injury coverage for the Butchers, and Meyer so informed Butcher.

Meyer delivered Truck's policy, naming the Butchers (Mr. and Mrs.) as insureds, in May 1986. The policy period was October 1, 1985, to October 1, 1986. Butcher put the Truck policy away without reading it; it does not contain personal injury coverage.[2] When asked why he did not read the policy, Butcher said: "Because I don't understand them. I figure Mr. Meyer would do the job as well as anybody, so I didn't read it, no." Truck continued to renew Butcher's policies until November 6, 1992.

In 1977 Butcher contracted to sell real property to James Hennefer and Robert Klein. After the parties modified the agreement, Butcher cancelled the escrow. Hennefer and Klein sued Butcher for specific performance and ultimately obtained final judgment in their favor in 1986. From late 1986 until early 1990 either or both of the Butchers pursued four lawsuits against Hennefer and others, each with the objective of avoiding execution and delivery of a deed to the property as required by the specific performance judgment. In each of these actions, the defendants obtained judgment in their favor. Based on these four actions, in 1992 Hennefer and others filed a malicious prosecution action against the Butchers, their son-in-law, and one of their former attorneys; the case is entitled *Hennefer v. Butcher* (Super. Ct. L.A. County, No. SWC 113245) (the *Hennefer* action).

The Butchers sought, from Truck and their former insurers (West American, American Home Assurance Company (American Home), and Continental Insurance Company (Continental)), a defense and indemnification in connection with the *Hennefer* action. When Truck declined to defend, the Butchers hired their own attorneys. In December 1995 plaintiffs in the *Hennefer* action obtained judgment against the Butchers in the amount of

---

[2]The insuring agreement of the Truck policy provides: "The Company agrees . . . [t]o pay all damages which the insured becomes legally obligated to pay because of . . . bodily injury to any person, and . . . damage to property, except that arising out of the ownership, maintenance or use of any automobile to which this insurance applies, caused by an occurrence. [¶] The Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . ." The policy defines "occurrence" as "an event, or series of events, including injurious exposure to conditions, proximately caused by an act or omission of the insured regardless of the number of persons, vehicles or objects affected by such act or omission which results, during the policy period, in bodily injury or property damage, neither expected nor intended from the standpoint of the insured." The policy defines "bodily injury" as "bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person." The West American policies also contained this coverage.

$16,811,200 plus punitive damages against Butcher individually in the amount of $3 million. The Butchers claim they settled this action while it was on appeal.

In 1994 Continental sued the Butchers in federal district court (the federal action), seeking a declaration that it had no duty to defend or indemnify them in the *Hennefer* action. In the federal action, entitled *Continental Ins. Co. v. Hennefer* (C.D.Cal. No. 94-5613), the Butchers filed a third party complaint against Truck, Meyer, American Home, and West American. The district court dismissed the Butchers' action against American Home for failure to state a cause of action. Continental and West American obtained summary judgment in 1995 that no defense or indemnity was owed the Butchers. The district court ruled in favor of West American on two grounds: (1) the *Hennefer* action arose from a contractual obligation (the property sale contract between Butcher, on the one hand, and Hennefer and Klein, on the other) that was not met, and the policy covered tort injuries, but not injuries arising out of contractual obligations; and (2) the causes of action in the Hennefer action were based on events outside the policy period, i.e., the policy expired in 1985, and the first of the lawsuits, on which the malicious prosecution claim was based, was filed in late 1986. The Ninth Circuit affirmed the judgment in favor of West American on the ground that the claims being asserted were outside its policy period and refused to consider the first ground. (*Continental Ins. Co. v. Hennefer* (9th Cir. 1997) 117 F.3d 1424.) With Continental, American Home, and West American out of the case, the district court dismissed the Butchers' third party complaint against Truck and Meyer, citing an absence of diversity jurisdiction between the remaining parties.

The Butchers filed this action against Truck and Meyer in February 1996 and alleged, as policyholders, they were owed a defense and indemnity in the *Hennefer* action. Appellants' complaint contains causes of action against Truck for breach of the insurance contract, breach of the implied covenant of good faith and fair dealing (bad faith), declaratory relief, and reformation of the insurance contract, causes of action against Truck and Meyer for negligent misrepresentation and negligent failure to procure adequate liability insurance coverage, and a cause of action against Meyer for breach of contract to procure insurance.

Truck and Meyer moved for summary judgment. Truck argued: (1) the conduct alleged in the *Hennefer* action was not an "occurrence," as defined in the Truck policy, and did not seek compensation for "bodily injury" or

"property damage";[3] (2) there can be no claim for bad faith in the absence of a breach of contract; (3) the final judgment in the federal action, involving a ruling that the claim in the *Hennefer* action arose from an unmet contractual obligation, which claim the West American policy did not cover, precludes the Butchers' claim; (4) malicious prosecution is a wilful act, and under Insurance Code section 533 an insurer is not liable for a loss caused by such an act; (5) the Butchers' failure to read the policy eliminates any claim based on the failure to include personal injury coverage; (6) the claims for reformation, negligent misrepresentation and negligent failure to procure insurance are barred by the two- and three-year statutes of limitation (Code Civ. Proc., §§ 339 and 338); and (7) an insurer cannot be liable for an award of punitive damages against the insured. Meyer joined in Truck's motion and argued the collateral estoppel effect of the judgment in the federal action, the running of the statutes of limitation, and the absence of justifiable reliance due to the failure to read the policy. The trial court granted summary judgment in favor of Truck and Meyer, ruling that the Butchers' claims were barred by the doctrine of collateral estoppel and that Insurance Code section 533 barred coverage for malicious prosecution. Appellants appeal from that judgment.[4]

## II

### DISCUSSION

#### A. *Standard of Review*

 The trial court's ruling on summary judgment is subject to de novo review. (*580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 13-14 [272 Cal.Rptr. 227].) A summary judgment is properly granted only where "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken" in support of and in opposition to the motion "show that there is no

---

[3]Appellants have not contended that the Truck policy, in the form it was delivered, obligates Truck to defend or indemnify them in the *Hennefer* action.

[4]The text recites the trial court's oral ruling at the hearing on January 22, 1998. The trial court filed orders granting summary judgment on March 18, May 21, and June 5, 1998, and judgments on the first two dates. The first two orders and the judgments relate to the motions of both respondents; the last, to Truck only. The last omits as a basis for the ruling that the form of the West American policy does not cover the *Hennefer* action because it is ex contractu and the finding that plaintiffs were not damaged by any act of Meyer; it adds summary adjudication of eight issues. Because this appeal presents a pure question of law, our review is de novo and we give no deference to the trial court's ruling or the reasons for its ruling. (See *Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].) Accordingly, it is unnecessary to detail further the bases of the trial court's various orders.

triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subds. (b), (c).)

Evidence submitted by the parties does not dispute that appellants asked the agent to duplicate their existing coverage, but the evidence is in conflict concerning whether Truck's agent told Butcher that Truck would not be providing personal injury coverage. Butcher says the agent never said that, and the agent led him to believe the new coverage matched the old. Respondents contend, in spite of this conflict in the evidence, that Butcher had a duty to read his policy. ■ "Whether a duty of care exists is a question of law for the court. (*Wilson v. All Service Ins. Corp.* (1979) 91 Cal.App.3d 793, 796 [153 Cal.Rptr. 121]; *Raymond v. Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8-9 [31 Cal.Rptr. 847].) Also, whether, and the extent to which a new duty is recognized is a question of public policy. (*Raymond . . . , supra.*)" (*Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954 [234 Cal.Rptr. 717].)

## B. *The Doctrine of Issue Preclusion*

Respondents argue that the issues litigated and determined by a valid and final judgment in the federal action are conclusive in this action and require a judgment in their favor. To resolve this contention, we must answer the question, to what faith and credit is the federal judgment entitled?

Article IV, section 1 of the United States Constitution commands that "Full Faith and Credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."[5]

■ The relationship between the full faith and credit clause and the doctrine of res judicata was addressed by Chief Justice Stone in *Magnolia Petroleum Co. v. Hunt* (1943) 320 U.S. 430, 439-440 [64 S.Ct. 208, 214, 88 L.Ed. 149, 150 A.L.R. 413], as follows: "[T]he clear purpose of the full faith and credit clause [is] to establish throughout the federal system the salutary principle of the common law that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered, so that a cause of action merged in a judgment in one state is likewise merged in every other. . . . Because there is a full faith and credit clause a defendant may not a second time challenge the validity of the plaintiff's right which has ripened into a judgment and a plaintiff may not for his single cause of action secure a second or a greater recovery."

---

[5]How this clause came to mean that that the scope and effect of a federal judgment are identical to those of a judgment of a court of the state in which the federal judgment is rendered is traced in Degnan, *Federalized Res Judicata* (1976) 85 Yale L.J. 741, 742-749.

■ The doctrine of issue preclusion represents a choice between the competing values of correctness, uniformity, and repose. Further examination of an issue once decided may yield a better informed result, but that is not necessarily the case. Nevertheless, judicial efficiency requires that there be an end to litigation at some point.[6] Our system resolves the conflict between these competing values by holding that an issue once determined normally may not be reexamined in a later proceeding. Here we are required to ascertain the issue that was determined as a result of a prior action, from which an appeal was taken to a higher court, which filed its own decision.

Two issues were litigated and determined by the federal district court: (1) the *Hennefer* action arose from a contractual obligation (the property sale contract between Butcher, on the one hand, and Hennefer and Klein, on the other) that was not met, and the policy covered tort injuries, but not injuries arising out of contractual obligations; (2) the causes of action in the *Hennefer* action were based on events outside West American's policy period, which expired in 1985. (The first of the lawsuits, on which Hennefer's malicious prosecution claim was based, was filed in 1986.) When the appeal was taken to the Ninth Circuit, that court affirmed the judgment on the second ground and refused to consider the first.

■ Appellants contend, correctly, we conclude, that in this situation the federal judgment is conclusive, in a subsequent action, on only the second determination—that the offense of malicious prosecution, which was the subject of the *Hennefer* action, was not committed during West American's policy period. That determination is of no assistance to Truck, which had a later policy period. The reasons that compel this conclusion are set out below.

■ California follows the rule that the preclusive effect of a prior judgment of a federal court is determined by federal law, at least where the prior judgment was on the basis of federal question jurisdiction. (*Levy v. Cohen* (1977) 19 Cal.3d 165 [137 Cal.Rptr. 162, 561 P.2d 252] (*Levy*), cert. den. 434 U.S. 833 [98 S.Ct. 119, 54 L.Ed.2d 94]; *Martin v. Martin* (1970) 2 Cal.3d 752 [87 Cal.Rptr. 526, 470 P.2d 662] (*Martin*).) In *Martin, supra,* 2 Cal.3d at page 761 the court stated: "On [the] question of finality federal law is controlling. A federal court judgment has the same effect in the courts of

---

[6]"Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first." (*Stoll v. Gottlieb* (1938) 305 U.S. 165, 172 [59 S.Ct. 134, 138, 83 L.Ed. 104].)

this state as it would in a federal court." The *Levy* court stated the rule as follows: "Full faith and credit must be given to a final order or judgment of a federal court. . . . Such an order or judgment has the same effect in the courts of this state as it would have in a federal court. . . . In the federal jurisdiction, the doctrine of res judicata prevents the readjudication of all matters . . . which were, or might have been, litigated in a prior proceeding between the same parties." (19 Cal.3d at pp. 172-173, citations omitted.) The prior action in each of these cases was filed under the Bankruptcy Act, which presented a federal question. (See *Stoll v. Gottlieb, supra,* 305 U.S. at p. 170 [59 S.Ct. at pp. 136-137].) After the decision in *Levy,* the United States Supreme Court held, in *Limbach v. Hooven & Allison Co.* (1984) 466 U.S. 353, 361-362 [104 S.Ct. 1837, 1842-1843, 80 L.Ed.2d 356], that a state court must apply federal law to determine preclusive effect of prior federal question judgment.

Our case, however, presents the slightly different question of whose law governs the preclusive effect of a prior federal diversity judgment. The choice of law issue is potentially important in this case, because a California case decided in the first half of this century applied state law concerning preclusion in a manner contrary to the rule that we shall follow. (See *Bank of America v. McLaughlin etc. Co.* (1940) 40 Cal.App.2d 620 [105 P.2d 607] (*Bank of America v. McLaughlin* or *McLaughlin*).)

Since the adoption of the Federal Rules of Civil Procedure and the development of modern perceptions of diversity jurisdiction, a majority of circuits follows the rule that the federal law of res judicata should be applied where the prior case is brought in a federal court under diversity jurisdiction.[7] (See, e.g., *Paramount Aviation Corp. v. Augusta* (3d Cir. 1999) 178 F.3d 132, 144-145, cert. den. __ U.S. __ [120 S.Ct. 188, 145 L.Ed.2d 158]; *J.Z.G. Resources, Inc. v. Shelby Ins. Co.* (6th Cir. 1996) 84 F.3d 211,

---

[7]"In an old line of cases that has never been overruled, the Supreme Court has held that the states may apply their own law to determine the preclusive effect of a federal diversity judgment. *See Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co. v. Long Island Loan and Trust Co.,* 172 U.S. 493, 19 S.Ct. 238, 43 L.Ed. 528 (1899); *Metcalf v. Watertown,* 153 U.S. 671, 14 S.Ct. 947, 38 L.Ed. 861 (1894); *Crescent City Live Stock Co. v. Butchers' Union Slaughter-House Co.,* 120 U.S. 141, 7 S.Ct. 472, 30 L.Ed. 614 (1887); *Dupasseur v. Rochereau,* 88 U.S. (21 Wall.) 130, 22 L.Ed. 588 (1875). . . ." (*Gelb v. Royal Globe Ins. Co.* (2d Cir. 1986) 798 F.2d 38, 42, fn. 3, cert. den. (1987) 480 U.S. 948 [107 S.Ct. 1608, 94 L.Ed.2d 794].)

The court in *Gelb* pointed out two factors that may have eroded the "old line of cases": (1) in the cases the Supreme Court relied on the Conformity Act, which required federal courts to apply state procedural rules, and that act has been replaced by the Federal Rules of Civil Procedure; and (2) "the Supreme Court has required the federal courts to give state judgments such collateral estoppel, *see Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and *res judicata, see Migra v. Warren City School District Board of Education,* 465

213-214; *Havoco of America v. Freeman, Atkins & Coleman* (7th Cir. 1995) 58 F.3d 303, 307-308; *Johnson v. SCA Disposal Services of New England* (1st Cir. 1991) 931 F.2d 970, 974; *Empire Fire & Marine Ins. Co. v. J. Transport* (11th Cir. 1989) 880 F.2d 1291, 1293, fn. 2; *Shoup v. Bell & Howell Co.* (4th Cir. 1989) 872 F.2d 1178, 1179; *Aerojet-General Corporation v. Askew* (5th Cir. 1975) 511 F.2d 710, 716, cert. den. 423 U.S. 908 [96 S.Ct. 210, 46 L.Ed.2d 137]; *Kern v. Hettinger* (2d Cir. 1962) 303 F.2d 333, 340 fn. 8; see also Rest.2d Judgments, § 87;[8] but see *Pardo v. Olson & Sons, Inc.* (9th Cir. 1994) 40 F.3d 1063, 1066 [applying the law of the state in which the first federal diversity court sat]; *Austin v. Super Valu Stores, Inc.* (8th Cir. 1994) 31 F.3d 615, 617-618 [same]; *Gramm v. Lincoln* (9th Cir. 1958) 257 F.2d 250, 255, fn. 6 [same].)

*Kern v. Hettinger, supra*, 303 F.2d 333 contains a forceful statement of the rationale for this rule. In that case a district court in California dismissed a diversity action for failure to prosecute. In a second diversity action brought against the same defendant in a district court in New York, the defendant argued that the dismissal should be governed by the California rule that denies preclusion, not by Federal Rules of Civil Procedure, rule 41(b) (28 U.S.C.).[9] The Second Circuit (Medina, J.) persuasively rejected that argument: "One of the strongest policies a court can have is that of determining the scope of its own judgments. . . . It would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity. . . . [W]e think it would be a strange doctrine to allow a state to nullify the judgments of federal courts constitutionally established and given power also to enforce state created rights. The Erie doctrine . . . is not applicable here . . . ." (303 F.2d at p. 340, citations omitted.)

U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), effect as would the courts of the rendering state. . . ." (*Gelb v. Royal Globe Ins. Co., supra*, 798 F.2d at p. 42, fn. 3.)

See generally 18 Wright et al., Federal Practice and Procedure: Jurisdiction (1981) Res Judicata in Federal system, section 4472, pages 732-740; *id.* (1999 supp.) section 4472, pages 764-772, footnotes 20-42.

[8]Section 87 of the Restatement Second Judgments provides: "Federal law determines the effects under the rules of res judicata of a judgment of a federal court."

[9]Federal Rules of Civil Procedure, rule 41(b) (28 U.S.C.) provides: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under rule 19, operates as an adjudication upon the merits."

The Ninth Circuit bases its contrary rule, without extended analysis, on the *Erie* doctrine,[10] 28 United States Code section 1652,[11] and *Oklahoma Packing Co. v. Gas Co.* (1940) 309 U.S. 4 [60 S.Ct. 215, 84 L.Ed. 537] (prior action in state court). (*Gramm v. Lincoln, supra,* 257 F.2d at p. 255, fn. 6.) The Eighth Circuit, also with cursory analysis, bases its rule on the combined effect of the *Erie* doctrine and the full faith and credit clause, as supplemented by 28 United States Code section 1738.[12] (*Austin v. Super Valu Stores, Inc., supra,* 31 F.2d at pp. 617-618.)

Our Supreme Court, in *Levy, supra,* 19 Cal.3d at pages 172-73, and *Martin, supra,* 2 Cal.3d at page 761, did not give any indication that the rule it was announcing—the preclusive effect of a prior judgment of a federal court is determined by federal law—would differ depending on whether the basis of the federal court's jurisdiction was diversity or federal question. If our Supreme Court, in a diversity jurisdiction situation, would apply the res judicata law of the state whose law the federal court was applying, in the case at hand (involving the federal action), that would be the law of California. If, however, our Supreme Court would apply the rule of *Levy* and *Martin* to both diversity and federal question situations, the law to be applied would be federal law, which in this case would be the law followed by the Ninth Circuit. That law, in turn, as we have seen (e.g., *Gramm v. Lincoln, supra,* 257 F.2d at p. 255, fn. 6), is the law of the forum state, which in this case is California. Accordingly, whichever rule our Supreme Court would follow, the choice of law rule points to the res judicata law of California. We, therefore, next consider the rule that applies in California in the circumstances of this case.

 Here a lower court has based its judgment on a determination of two grounds, and a final judgment entered by the appellate court affirms that

---

[10]*Erie R. Co. v. Tompkins* (1938) 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487].

[11]Section 1652 of title 28, United States Code provides: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

[12]Section 1738 of title 28, United States Code provides: "The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto. [¶] The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. [¶] Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

judgment, upholding one of those determinations but not the other. In this situation there are two lines of cases. One line follows the rule that the appellate court in the prior action determines the preclusive effect of its judgment, i.e., the judgment is conclusive on the first ground (see *Niagara Mohawk Pow. v. Tonawanda Band of Seneca Ind.* (2d Cir. 1996) 94 F.3d 747, 754 (*Niagara Mohawk*) [effect of prior federal judgment on state action]; *Gelb v. Royal Globe Ins. Co., supra,* 798 F.2d at p. 45 [effect of prior federal question judgment on diversity action]; *Martin v. Henley* (9th Cir. 1971) 452 F.2d 295, 300 [effect of prior federal question judgment on state action]; *Moran Towing & T. Co. v. Navigazione Libera Triestina, S. A.* (2d Cir. 1937) 92 F.2d 37, 40, (*Moran Towing*) cert. den. 302 U.S. 744 [58 S.Ct. 145, 82 L.Ed. 575] [effect of prior state judgment on federal court applying federal law]; see also Rest.2d Judgments, § 27, com. o, p. 263; Note, *Developments in the Law—Res Judicata* (1952) 65 Harv. L.Rev. 818, 845-46 (*Developments*)); the other line holds that it is the judgment of the trial court, which is affirmed, that governs the preclusive effect, i.e., the judgment is conclusive on both grounds (see *Bank of America v. McLaughlin, supra,* 40 Cal.App.2d 620, and cases and authorities cited therein).

*Moran Towing, supra,* 92 F.2d 37, is illustrative of the rule that the appellate court in the prior action determines the preclusive effect of its judgment. In that case the Brenta II, a ship owned by Navigazione Libera Triestina, S.A. (NLT), was being assisted by two tugs owned and operated by Moran from a dock owned by Robins Company, when the ship struck and damaged the entrance to the dock. At the time the master of one of the tugs, Healey, was acting as pilot on the Brenta. A few weeks earlier, NLT received a letter from Moran stating the terms under which work would be done; a pilotage clause in the letter stated that when the captain of a tug, engaged in assisting a vessel using its own propelling power, boards the vessel, it is agreed that the tugboat captain becomes a servant of the owner in respect to the giving of orders to assisting tugs and the handling of the vessel, and neither the tugs nor their owners shall be liable for any resulting damage. Robins sued NLT and Moran, alleging negligence, in New York state court to recover damages for injuries to the dock. The parties waived findings, and the trial judge directed judgment for Robins against Moran and dismissed the complaint against NLT. In ruling that the injuries to the dock resulted from the negligence of the tug captain in charge of undocking on board the Brenta, the trial court made two findings: (1) that Moran could not divest itself of liability to third persons by calling Healey the servant of another and that it was liable to Robins because Healey was acting as its servant and engaged in its business; (2) that the "pilotage clause" would not relieve Moran of liability to NLT because the clause called for Moran to furnish pilots with a New York state license, and Healey did not have one.

The appellate division affirmed without opinion, and the Court of Appeals affirmed. The opinion of the Court of Appeals found that Healey's negligence caused the injuries and that Moran, having agreed to undock the Brenta, acted as an independent contractor and was liable to Robins unless relieved by the pilotage clause. The opinion further stated that the clause had no validity as to third persons and was not conclusive on Robins. The Court of Appeals did not find that the pilotage clause required Moran to supply a state-licensed pilot.

In a subsequent admiralty proceeding in federal district court Robins sought indemnity from Moran, which asserted the res judicata bar of the trial court's second finding. The district court ruled in favor of Moran. The Second Circuit held that statements in the opinions of the New York trial and appeals courts were proper sources from which to determine what those courts decided. Moran relied on *Russell v. Russell* (3d Cir. 1905) 134 Fed. 840, which held that unconditional affirmance by an appellate court, though rendered on entirely different grounds or only on some of the grounds upon which the decision of the lower court was rendered, leaves the questions determined by the lower court as res judicata in all respects. The Second Circuit declined to follow, and strongly criticized, that rule. "To treat as controlling the findings of a trial court when the appellate court upsets or disregards them and renders a decision of affirmance on different grounds furnishes parties to other litigations affected by the decision a false guide." (92 F.2d at p. 40.) Characterizing such a result as "the height of unreason," the *Moran Towing* court held it could "look at such evidence as there is to discover the ground of the decision . . . ." (*Id.* at pp. 40-41.) In this connection the court cited (*id.* at p. 41, fn. 1.) *Oklahoma v. Texas* (1921) 256 U.S. 70, 88 [41 S.Ct. 420, 423, 65 L.Ed. 831], in which the Supreme Court, in the context of res judicata, held: "*What was involved and determined in the former suit is to be tested by* an examination of the record and proceedings therein, including the pleadings, the evidence submitted, the respective contentions of the parties, and *the* findings and *opinion of the court . . . .*" (Italics added.)

The Restatement Second of Judgments, in the section addressing the effect of an appeal, is to the same effect as *Moran Towing*: "If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations. . . . [¶] . . . [¶] If the appellant court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination." (Rest.2d Judgments, *supra*, § 27, com. o, p. 263.)

The *Developments* note, *supra*, 65 Harv. L.Rev. at pages 845-846, foretells the rule stated 30 years later in the Restatement Second: "Where an appeal is taken and the judgment is affirmed on only one of alternative grounds, the courts apply collateral estoppel only to that issue." (Fn. omitted.) The note cites *Moran Towing* and other cases and authorities, and puts down that *Bank of America v. McLaughlin*, which we discuss below, is contra.

Witkin's discussion of collateral estoppel contains the following statement: "Where the judgment is based on alternative grounds or issues, *and is affirmed generally on appeal*, the estoppel will result as to all of the issues. (*Bank of America* v. *McLaughlin Land & Livestock Co.* (1940) 40 C.A.2d 620, 628 105 P.2d 607[;] *Wall* v. *Donovan* (1980) 113 C.A.3d 122, 126 169 C.R. 644; Rest.2d, Judgments, § 27, Comment o; 65 Harv. L. Rev. 845.)" (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 355, p. 918, italics added.) Although it is not entirely clear, Witkin is apparently referring only to the first sentence of the portion of comment *o* of the Restatement Second, quoted *ante* at page 1457. *Wall v. Donovan*, *supra*, 113 Cal.App.3d 122, also cited by Witkin, does not involve a situation where the prior judgment was appealed. The remaining case cited by Witkin as authority for the quoted statement is *Bank of America v. McLaughlin*, and this case indeed holds contrary to the rule as stated in *Niagara Mohawk*, *supra*, 94 F.3d 747, *Gelb v. Royal Globe Ins. Co.*, *supra*, 798 F.2d 38, *Martin v. Henley*, *supra*, 452 F.2d 295, *Moran Towing*, *supra*, 92 F.2d 37, and the Restatement.

*Bank of America v. McLaughlin* involved a prior federal bankruptcy proceeding, in which the referee determined two issues—that McLaughlin was not a "farmer" under the terms of the Bankruptcy Act and that it was not the owner of the property it claimed to be farming. The federal Ninth Circuit affirmed, resting its opinion on McLaughlin's relation as a farmer. (40 Cal.App.2d at p. 625, citing *McLaughlin Land & Livestock Co. v. Bank of America etc.* (9th Cir. 1938) 94 F.2d 491.) As for "the effect of a decree determining more than one issue" (40 Cal.App.2d at p. 628), the California Court of Appeal in *McLaughlin* ignored statements to the contrary in the federal Ninth Circuit's opinion,[13] and held: "[The bankruptcy] court, upon issues squarely presented by . . . appellant, found that appellant was not a farming corporation, and also found that the trustees' sale was valid, that the bank became the owner of the property by purchase at a trustees' sale, and that appellant owned no interest. These findings having been incorporated in

---

[13]The circuit court's decision states: "We express no opinion on the question of the jurisdiction of the state court to determine the validity of any sale of the property here involved or on other questions raised by appellant; it not being necessary so to do. [¶] The order of the District Court is affirmed upon the ground that the appellant was not, at the time of filing its petition or immediately prior thereto, a farming corporation." (*McLaughlin*, *supra*, 94 F.2d at 493.)

the judgment *it must be assumed* that when the Circuit Court of Appeals affirmed the judgment it became *res judicata* of both the issues tendered and tried. This rule is stated in 34 C. J. 773 as follows: 'A general affirmance of a judgment on appeal makes it *res judicata* as to all of the issues, claims, or controversies involved in the action and passed upon by the court below, although the appellate court does not consider or decide upon all of them.' Upon the same subject and to the same result, it was said in *State* v. *City of Cleveland,* 60 Ohio App. 395 [22 N. E. (2d) 223, 226]: 'However, it is universally held that a court speaks by its record or journal and not by its opinions, and nothing contained in the opinion of the Circuit Court of Appeals can affect the adjudication of the District Court, unless carried into the judgment of the reviewing court. The judgment of the Circuit Court of Appeals was an affirmance of the judgment of the District Court leaving that judgment in its entirety as a final and binding adjudication of the issues presented. (Citing cases.)' " (*Bank of America v. McLaughlin, supra,* 40 Cal.App.2d at pp. 628-629, first italics added.)

The rule stated at page 773 of volume 34 Corpus Juris (1924) Judgments, section 1190, cited by the *McLaughlin* court, is completely abandoned in the modern work, 50 Corpus Juris Secundum (1997) Judgment, section 725, page 266, which follows the Restatement: "In the case of a judgment based on alternative grounds, which is affirmed on only one of the grounds, the ground omitted from the decision is not considered to have been fully adjudicated and is not conclusively established for the purposes of res judicata." (C.J.S., *supra,* Judgment, § 725, p. 266, fn. omitted.) The only other authority cited by the *McLaughlin* court, *State ex rel. Squire v. City of Cleveland* (1937) 60 Ohio App. 395 [14 Ohio Op. 432, 22 N.E.2d 223, 226], relied on early federal circuit court decisions, the most recent of which was decided in 1905, and only that case, *Russell v. Russell, supra,* 134 Fed. 840 (*Russell*), a two-page decision, involved a res judicata issue.[14] The *Russell* court considered the effect of a prior state court judgment, which was the subject of an appellate decision. The lower federal court had held that the effect of the prior judgment could be determined by the views expressed by the appellate court in its filed opinion. The Third Circuit disagreed. (*Russell,*

---

[14]The other cases cited, *Caverly v. Deere* (7th Cir. 1895) 66 Fed. 305, 308; *Russell v. Kern* (7th Cir. 1895) 69 Fed. 94; and *Evans v. Suess Ornamental Glass Co.* (7th Cir. 1897) 83 Fed. 706, certiorari denied 171 U.S. 687 [18 S.Ct. 942] (*Evans*), concern archaic rules on the correct way to assign error in an appeal. For example, "an assignment of error which is predicated upon the opinion of the court, or upon a reason given by the court for its ruling or decree, is not available. [Citations.] It is something done by the court,—a ruling, judgment, order, or decree,—and not a reason therefor, which may be assigned as error." (*Evans, supra,* 83 Fed. at p. 709.)

at p. 841.)[15] As discussed, *ante*, at page 1457, the Second Circuit in *Moran Towing* strongly criticized the rule applied in *Russell*.

We note that the *McLaughlin* court reached its decision without considering the arguments, well stated three years earlier in *Moran Towing*, in favor of looking to the appellate court's opinion to discover the ground of its decision. The Supreme Court in *Martin, supra*, 2 Cal.2d at page 761, cited *McLaughlin*, but only for the proposition that a federal court judgment has the same effect in the courts of this state as it would in a federal court. The *Martin* court found it unnecessary to decide the issue that we determine here. (*Id.* at pp. 762-763.)

We conclude the reasoning of the *McLaughlin* court has not withstood the test of time, and it would be unwise to follow a rule that looks only to the judgments, without taking account of the reasons for those judgments as stated in the appellate courts' opinions. It is universally recognized that "[a]ppellate review plays a central role in assuring the accuracy of decisions" (*Gelb v. Royal Globe Ins. Co., supra*, 798 F.2d at p. 44), and the appellate courts in the federal and state systems are empowered to decide the effect of their judgments. Indeed, the principle of finality is an essential element of a court's authority. We are persuaded that *Moran Towing* announces the better rule, and we shall decline to follow the rule as stated in *McLaughlin*. We hold that if a court of first instance makes its judgment on alternative grounds and the reviewing court affirms on only one of those grounds, declining to consider the other, the second ground is no longer conclusively established.[16]

Here, the Ninth Circuit in *Continental Ins. Co. v. Hennefer, supra*, 117 F.3d 1424 affirmed only the determination of the district court that the causes of action in the underlying action were based on events occurring outside the West American policy period. Accordingly, the judgment in that action is without preclusive effect on whether the form of the West American policy covers the claim asserted in the *Hennefer* action.

## C. *The Summary Judgment Motion*

Respondents contend appellant's failure to compare their old policy with its replacement precludes their claim in this case. Respondent Meyer also

---

[15]There is a question whether the Third Circuit would follow *Russell* today. See *Paramount Aviation Corp. v. Augusta, supra*, 178 F.3d 132.

[16]The cases following the rule that we adopt did not turn on the nature of the prior judgment—whether federal question, diversity, or state. "[It] is still true [that there is little difference in the doctrine of res judicata as expounded in state and federal courts], so that it is still usually a moot question whether the effect of a federal judgment is determined by federal law or state law." (Rest.2d Judgments, § 87, com. a, p. 315.)

contends the form of the old policy does not provide coverage for the malicious prosecution claim involved in this case, because that claim is contract based, the original contract action by Hennefer and Klein against Butcher being for specific performance, and liability policies cover claims based on tort, not contract. We address these issues in turn.

### 1. *Failure to deliver agreed-upon coverage*

An insurance agent has an "obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." (*Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954 [234 Cal.Rptr. 717].) The law is well established in California that an agent's failure to deliver the agreed-upon coverage may constitute actionable negligence and the proximate cause of an injury. (See *Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1120 [55 Cal.Rptr.2d 276]; *Clement v. Smith* (1993) 16 Cal.App.4th 39, 45 [19 Cal.Rptr.2d 676]; *Kurtz, Richards, Wilson & Co. v. Insurance Communicators Marketing Corp.* (1993) 12 Cal.App.4th 1249, 1257 [16 Cal.Rptr.2d 259] [broker negligently represented that insured was not subject to Medicare provisions of federal statute]; *Free v. Republic Ins. Co.* (1992) 8 Cal.App.4th 1726, 1730 [11 Cal.Rptr.2d 296] [negligent failure of agent to respond to homeowner's inquiry concerning adequacy of coverage limits to rebuild home]; *Westrick v. State Farm Insurance* (1982) 137 Cal.App.3d 685, 692 [187 Cal.Rptr. 214]; *Jackson v. Aetna Life & Casualty Co.* (1979) 93 Cal.App.3d 838, 840, 848 [155 Cal.Rptr. 905] [negligent failure of agent to add lessor as additional insured party]; *Greenfield v. Insurance Inc.* (1971) 19 Cal.App.3d 803 [97 Cal.Rptr. 164] [negligent failure of agent to obtain the coverage requested by client]; cf. *Eddy v. Sharp* (1988) 199 Cal.App.3d 858, 866 [245 Cal.Rptr. 211] [negligent failure of agent to include loss due to water backing up through drains or sewers in cover letter's listed exclusions].)

In *Desai v. Farmers Ins. Exchange, supra,* 47 Cal.App.4th 1110 (*Desai*), a homeowner requested insurance from his agent that would fully protect the home he bought. Based on the agent's oral representation that a policy offered by Farmers Insurance Group would provide " '100% coverage for the costs of repairs and/or replacement of the improvements to the property including any and all increases in costs of repair or rebuilding in the event of a loss' " (*id.* at p. 1114), the insured purchased the policy. Before the policy issued, the agent inspected the property to determine the amount of coverage needed to fill the insured's stated requirements. The policy was renewed annually. The insured sustained damages in excess of $500,000 from a fire and an earthquake and submitted his claim. Farmers paid only $158,734 as allegedly dictated by the terms of the policy. (*Id.* at p. 1115.)

The *Desai* court described this as "a 'failure to deliver the agreed-upon coverage' case" (*Desai, supra,* 47 Cal.App.4th at p. 1119) and held the agent's failure to obtain the insurance requested was actionable negligence, and the insurer was vicariously liable. (*Id.* at pp. 1119-1120.) Based on the facts alleged, "the reasonable expectations of the insured would be that he was completely covered for the replacement cost of the structures, regardless of the policy limits." (*Id.* at p. 1114.)

In *Clement v. Smith, supra,* 16 Cal.App.4th 39, the insured obtained contract liability insurance and twice received assurances from the agent that the policy would cover litigation by a specific person. When that person sued the insured for breach of contract, the insurer denied coverage because the policy in fact covered only personal injury and property damage. The court held: "Absent some notice or warning, an insured should be able to rely on an agent's representations of coverage without independently verifying the accuracy of those representations by examining the relevant policy provisions. This is particularly true in view of the understandable reluctance of an insured to commence a study of the policy terms where even the courts have recognized that few if any terms of an insurance policy can be clearly and completely understood by persons untrained in insurance law. [Citations.]" (*Id.* at p. 45.)

In *Westrick v. State Farm Insurance, supra,* 137 Cal.App.3d 685, the insured had two cars insured with State Farm. He told his agent he planned to buy a four-wheel pickup truck and wanted to know if the vehicle would be covered when he drove it home from the seller's place of business. The agent told him it would be automatically covered for 30 days under the policy, but the insured should " 'let him know just as soon as possible.' " (*Id.* at p. 688.) The insured did not buy the truck, but two months later he bought a welding business, which involved two vehicles, for his son. He called his agent, who was out, but he spoke with the agent's father (also a State Farm agent) and described the vehicles, one of which was a six-wheeled welding truck. When the insured offered the serial numbers, the father said that was not necessary. The insured said he would be in the next day to talk with the son (the insured's agent). That night, the insured told his son he had insurance for the welding truck; the next day it was involved in an accident. In fact, the automatic coverage provision of the policy applied to an "automobile," which was defined as a "four wheel" vehicle. (*Id.* at p. 688, fn. 1.) The court held, based on the insured's inquires and the agent's superior knowledge, the agent was negligent in failing to inform the insured the truck would not be covered under his existing policy. The agent's duty is " 'reasonably to inform an insured of the insured's rights and obligations under the insurance policy.' [Citation.]" (*Id.* at p. 692.)

The cases cited and discussed above demonstrate that, if the facts relating to the purchase of the Truck policy are shown to be as related by Butcher, the trier of fact could find the insureds were misled by Meyer's negligent failure to warn that personal injury was not among the coverages of the policy.

Respondents urge us to follow a line of cases standing for the proposition that an insured has a duty to read the policy. (See *Hadland v. NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578 [30 Cal.Rptr.2d 88]; *Malcom v. Farmers New World Life Ins. Co.* (1992) 4 Cal.App.4th 296 [5 Cal.Rptr.2d 584]; *Hackethal v. National Casualty Co.* (1987) 189 Cal.App.3d 1102 [234 Cal.Rptr. 853].) They argue that a simple comparison of Truck's policy with West American's would have disclosed the absence of personal injury coverage.

None of the cases relied upon by respondents involve an insured being misled by the negligence of an insurance agent. In *Malcom v. Farmers New World Life Ins. Co., supra,* 4 Cal.App.4th 296, the insurer issued life insurance policies which excluded the risk of suicide during the first two policy years, the insured committed suicide within two years, and the insurer declined the claims. The plaintiff beneficiaries opposed summary judgment, based on inquiries by the insured to the Farmers agent about the effect the insured's earlier treatments for depression would have on the scope of coverage. The beneficiaries argued that under *Westrick v. State Farm Insurance* the disparity of knowledge between the insured and Farmers gave rise to an affirmative duty to point out the suicide provision and explain its meaning. The court rejected this contention, holding that under those facts Farmers had no duty. There was no evidence the insured had asked Farmers whether the policies would cover suicide-related death or to explain the suicide provision after receiving the policies. (*Malcolm, supra,* 4 Cal.App.4th at p. 304.) *Malcom* is inapposite to the case at bar; here the insured asked Truck's agent to duplicate his coverage and, according to Butcher, Meyer misled the insured into believing he had done so. Those facts, if believed by the trier of fact, put this case into the *Westrick* line of cases, not the *Malcom* line.

In *Hackethal v. National Casualty Co., supra,* 189 Cal.App.3d 1102, a doctor ordered a "Defendants Reimbursement Policy," which was promoted with a brochure stating that the policy will pay the insured $200 " 'for each full day spent in court as a defendant' " and that it will " 'cover any suit . . . involving either professional acts or automobiles . . . .' " (*Id. at* p. 1106.) The two-page policy's coverage agreement stated the company would pay " 'for each day the insured is required to attend *the trial of a civil suit for damages against the insured* alleged to have been caused by malpractice in

the practice of the profession of the insured . . . .' " (*Id.* at p. 1107, italics in original.) Dr. Hackethal was charged with gross negligence and incompetence by the Board of Medical Quality Assurance, which required him to attend 39 days of hearings before an administrative law judge. He remembered that the agent had said the policy would cover any suit filed against him, even on matters other than malpractice, and he sought reimbursement. When the insurer denied coverage, Dr. Hackethal sued for bad faith and fraud. The court noted that the brochure stated it was an outline and referred the reader to the policy for complete details, and the policy proclaimed in bold letters: " 'PLEASE READ YOUR POLICY.' " (*Id. at* p. 1112.) Dr. Hackethal admitted that the agent never told him the policy provided coverage for administrative hearings. Under these facts, the court found the insured had a duty to read his policy. *Hackethal* is distinguishable from the case at bar, because the insured there was not misled by the agent or the insurer.

In *Hadland v. NN Investors Life Ins. Co., supra,* 24 Cal.App.4th 1578, the agent said the health insurance policy he was offering was " 'as good if not better' " than coverage under the insureds' old policy. (*Id.* at p. 1581.) The premium was half that of the insured's previous policy. The certificate came with a letter, asking insureds to read the certificate and call the NN office if they had any questions. The first page of the certificate advised insureds they could return the policy within 10 days if it did not meet their needs. Insureds did not read the insurance contract; it did not cover most outpatient expenses, and the benefits were subject to a maximum schedule. One of the insureds incurred $26,000 in hospital bills, of which the insurer paid less than half, in accordance with the policy terms. The insureds sued for fraud. The court held reliance was unjustified as a matter of law. In *NN Investors,* unlike the case at bar (at least according to Mr. Butcher's evidence), the agent did not omit to tell the insureds they were not receiving the coverage they had requested.

Respondents contend oral misrepresentations must not be allowed to override "the most clearly drafted [written] agreements," and holding otherwise will encourage insureds not to read their policies. While one might quarrel with whether insurance contracts in general are "clearly drafted agreements," this is not a case involving a dispute about the meaning of a policy provision.

A principle that underlies the "failure to deliver the agreed-upon coverage" cases is that a disparity in knowledge may impose an affirmative duty of disclosure on the insurer or its agent. (See *Westrick v. State Farm Insurance, supra,* 137 Cal.App.3d at p. 691, and authorities cited.) This principle applies, not just to insurance, but to all business transactions, and it

is recognized in section 551 of the Restatement Second of Torts, which provides: "(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question. [¶] (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, [¶] . . . [¶] (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." This Restatement rule is applicable to insurers. (See *Eddy v. Sharp, supra,* 199 Cal.App.3d at p. 864; *Westrick v. State Farm Insurance, supra,* 137 Cal.App.3d at p. 691, fn. 3; *Wells v. John Hancock Mut. Life Ins. Co.* (1978) 85 Cal.App.3d 66, 72, fn. 8 [149 Cal.Rptr. 171].)

Based upon the foregoing analysis, we conclude that the evidence put forward by Butcher in opposition to the summary judgment motion presents a triable issue of material fact at least insofar as his claims for reformation, negligent misrepresentation, negligent failure to procure adequate liability insurance coverage, and breach of contract to procure insurance.[17]

### 2. *The form of the West American policy*

■ We turn to respondent Meyer's contention that the form of the West American policy does not provide coverage for the malicious prosecution claim at issue. Meyer asserts that an agreement to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury," which term is defined as injury arising out of the offense of malicious prosecution committed during the policy period, will not cover the *Hennefer* action, because the actions on which the claim is based involved attempts to upset a decree for specific performance of a land sale contract. The policy language, says Meyer, insures actions ex delicto, not ex contractu.[18]

All of the cases relied upon by Meyer are distinguishable, and none involve an insured, with a policy providing personal injury coverage for

---

[17]In *Jones v. Grewe, supra,* 189 Cal.App.3d at page 955, the court held: "The insured may sue for breach of the agreement, or he may sue in tort for negligent breach of the duty imposed by the agreement."

[18]We note that the respondent insurer was unwilling to make this argument below or in its brief on appeal.

malicious prosecution, seeking a defense or indemnity in an underlying malicious prosecution action. (See *Stanford Ranch, Inc. v. Maryland Cas. Co.* (9th Cir. 1996) 89 F.3d 618 [insured with policies covering advertising injury, but excluding injury arising out of failure of performance of contract, not liable for defense or indemnity of underlying actions against developer for specific performance of contract to develop and sell tracts to subdevelopers]; *Old Republic Ins. Co. v. Superior Court* (1998) 66 Cal.App.4th 128 [77 Cal.Rptr.2d 642] [insurers with policies covering property damage caused by an occurrence not required to contribute to defense or indemnity of underlying action against lessee insured for breach of lease and waste]; *Wilmington Liquid Bulk Terminals, Inc. v. Somerset Marine Inc.* (1997) 53 Cal.App.4th 186 [61 Cal.Rptr.2d 727] [insured with policy covering personal injury, defined as injury arising out of wrongful entry or eviction or other invasion of the right of private occupancy, not entitled to defense of breach of contract to construct docking terminal]; *Fragomeno v. Insurance Co. of the West* (1989) 207 Cal.App.3d 822 [255 Cal.Rptr. 111] [lessee with policy covering personal injury, defined as injury arising out of wrongful entry or eviction or other invasion of the right of private occupancy, not entitled to defense of unlawful detainer action]; *Insurance Co. of the West v. Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308 [241 Cal.Rptr. 427] [insured with policy covering bodily injury and property damage, sued for breach of contract for manufacture and sale of trailers, not entitled to coverage].)

We find no merit to respondent Meyer's ex contractu contention. Malicious prosecution is a common law tort (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498]), and a policy in the form of the West American policy would obligate an insurer to defend, but not to indemnify, an insured sued in the *Hennefer* action (see *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 487 [78 Cal.Rptr.2d 142], discussed *post* (*Downey*)).

Because the briefs on appeal are unclear regarding the scope of malicious prosecution coverage being contended for, we shall address that point. As pleaded, this case involves a claim for the defense costs incurred by the Butchers in the *Hennefer* action and for indemnification for a judgment, which included punitive damages. Respondents contended below, but do not appear to do so on appeal, that Insurance Code section 533 bars coverage for malicious prosecution.[19] Appellants' briefs address the obligation to defend, but not to indemnify, and do not address their punitive damages claim.

Since appellants filed this case, the scope of malicious prosecution coverage has been definitively resolved in *Downey, supra,* 66 Cal.App.4th 478,

---

[19]Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

a case involving policy provisions essentially identical to those in the West American policy. In *Downey* Division Three of this district held: "[T]he public policy precluding indemnification coverage for 'wilful acts,' as expressed in [Insurance Code] section 533, bars indemnification for any malicious prosecution claim for which an insured is personally liable in California, even though such coverage was expressly promised in the policy; however, such public policy does not preclude a defense and an insurer promising coverage for malicious prosecution is nonetheless liable to provide a defense to such a claim." (66 Cal.App.4th at p. 487.)

The holding in *Downey* necessarily precludes appellants from obtaining indemnification for the punitive damages aspect of the *Hennefer* judgment. In any event, it has long been the rule in California that an insurer providing personal injury coverage for malicious prosecution will not be required to indemnify an insured for a punitive damage award. (See *City Products Corp. v. Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 36-42 [151 Cal.Rptr. 494].)

Truck's policy period was from October 1, 1985, until November 6, 1992. The Butchers filed the actions held in *Hennefer* to constitute malicious prosecution between 1986 and 1990. The definition of "personal injury" contained in the West American policy is "injury arising out of [the offense of malicious prosecution] committed during the policy period." We conclude that the form of the West American policy would obligate an insurer with Truck's policy period to defend the *Hennefer* action; the insurer would not be obligated to indemnify the insured.[20]

Under *Downey,* the Butchers may be entitled to recover their defense costs if they are able to prove they were misled by Truck's agent into believing that its policy duplicated the West American coverage. This is the first issue the trier of fact will have to resolve at trial. If the trier of fact finds in favor of respondents on this issue, the case is over; if it finds in favor of appellants, the case will be in a posture to resolve the appellants' remaining claims and the statute of limitations defenses.[21]

D. *Statutes of Limitations*

Respondents contend the claims for negligent misrepresentation and negligent failure to procure insurance are barred by the two-year statute of

[20]Appellants in oral argument conceded that the effect of *Downey* is as we have stated it, i.e., that the form of the West American policy entitles an insured to a defense for malicious prosecution but not to indemnity for compensatory or punitive damages.

[21]Inasmuch as appellants have not contended on appeal that the form of the Truck policy, as delivered, provides malicious prosecution coverage, their breach of contract cause of action has been waived. In additional, inasmuch as appellants are claiming damages, their cause of action for declaratory relief is superfluous.

limitations (Code Civ. Proc., § 339) and the claim for reformation, by the three-year statute (*id.*, § 338) as a matter of law.[22] This contention is based on the showing that the Truck policy was delivered to appellants in May 1986, and appellants waited until October 1994 to file their complaint against Truck and Meyer. Respondents also contend that sanctions of $10,000 imposed against Butcher in February 1990, in one of the cases forming the basis of the *Hennefer* action for malicious prosecution, necessarily would have caused a reasonable person to investigate the scope of coverage provided by Truck.

Appellants contend they were not damaged until Truck refused to provide a defense in the *Hennefer* action. That case was filed in 1992, and appellants tendered the claim to Truck on August 29 of that year. Appellants' complaint alleges Meyer reassured Butcher that the Truck policy contained the same coverages as the West American policy it was replacing, they reasonably relied on Meyer's representations, and their reliance resulted in injury on April 1, 1993, when Truck refused to defend them.

Resolution of these contentions requires us to decide when the period of limitations began on appellants' causes of action for negligence and reformation.

Section 312 of the Code of Civil Procedure, which introduces the title dealing with the time of commencing civil actions, provides: "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued . . . ." On certain causes of action the law in California has evolved to a point where the limitations clock begins to run only "when the injured party discovers or should have discovered the facts supporting liability." (*Davies v. Krasna* (1975) 14 Cal.3d 502, 512 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807], and cases cited.) The *Davies* court held that California "generally now subscribe[s] to the view that the period cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." (*Id.* at p. 513.)

In *Budd v. Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433], the court held that the limitations period on the plaintiff's legal malpractice

---

[22]The period of limitation prescribed for "[a]n action upon a contract, obligation or liability not founded upon an instrument in writing" is two years. (Code Civ. Proc., § 339, subd. 1.)

The period of limitation prescribed for "[a]n action for relief on the ground of fraud or mistake" is three years. (Code Civ. Proc., § 338, subd. (d).) "The cause of action in that case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (*Ibid.*)

claim did not begin until plaintiff had suffered "appreciable harm." (*Id.* at p. 200.) "The mere breach of . . . duty," said the court, "causing only nominal damages, speculative harm, or the threat of future harm—not yet realized" normally "does not suffice to create a cause of action." (*Ibid.*)

As part of its analysis of when the limitations clock begins to run, the court in *Davies v. Krasna, supra,* 14 Cal.3d at page 513, found "particularly illustrative" the case of *Walker v. Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513 [6 Cal.Rptr. 924] (*Walker*). In *Walker* the insured, in March 1952, ordered a policy with limits of $50,000 for bodily injury to one person. The insured's broker accepted the order but secured a policy with limits of only $15,000. In July 1952 the insured's truck collided with an automobile and injured Walker. She sued the insured and obtained a verdict for $100,000, on which the insurer paid $15,000. The insured assigned his claim to Walker, who brought an action in December 1956 alleging that the broker negligently procured coverage of only $15,000 instead of the $50,000 limit requested. Judgment was against the broker for $35,000 but in favor of the insurer. Walker did not appeal from the latter judgment, but the broker appealed, asserting the bar of the statute of limitations. The court held the limitations period on the negligence action against the broker began when the judgment was entered, not when the broker obtained the wrong policy: "It is clear that mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable. . . . Of course, it is uncertainty as to the fact of damage, rather than its amount, which negatives the existence of a cause of action. . . . In the case at bar, the fact of any damage at all was completely uncertain until judgment in the personal injury action." (*Walker, supra,* 183 Cal.App.2d at p. 517, citations omitted.) The *Walker* court rejected the contention that the plaintiff's assignor could have sued for nominal damages when he discovered the inadequacy of the coverage and held: "[A]n action for mere nominal damages would have been at best illusory, and cannot be held to start the running of the statute of limitations." (*Ibid.*)

Another case helpful on the accrual point is *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586 [83 Cal.Rptr. 418, 463 P.2d 770]. There the court recognized that "where a fiduciary obligation is involved" a cause of action does not accrue "until the beneficiary has knowledge or notice of the act constituting a breach of fidelity," and that this principle applies in the case of an insurance agent, citing *Walker,* 153 Cal.App.2d at pages 516-517. (*Haidinger-Hayes, Inc., supra,* 1 Cal.3d at p. 596.)

In the case at bar, although Meyer delivered the Truck policy that did not conform with his promise in 1986, the fact of any damage at all was

completely uncertain until Truck told appellants it would not defend them in the *Hennefer* action. Until the malicious prosecution action was filed and served, and appellants were required to defend, whether the omission of personal injury coverage would harm them at all was a mere possibility. That remained the case until Truck refused to defend the *Hennefer* action, which occurred April 1, 1993, and appellants filed suit against Truck and Meyer in October 1994, less than two years later.

*Walker* involved a negligence cause of action, and insofar as appellants' negligence-based causes of action, we conclude that respondents did not demonstrate by undisputed facts that the two-year statute of limitations had run.

Respondents fare no better on the reformation cause of action. The three-year statute, Code of Civil Procedure section 338, subd. (d), provides that the cause of action does not accrue, when the ground of relief is mistake, until the aggrieved party discovers the facts constituting the mistake. Respondents produced no evidence that the Butchers were aware, more than three years before October 1994 (when they filed a third party complaint against Truck and Meyer), that the Truck policy did not contain personal injury coverage.

Respondents' contention—that reasonable insureds in the position of appellants would have investigated the coverages of their policies when sanctions were awarded against them in the underlying actions which form the basis of the *Hennefer* action—is not persuasive. The sanctions were awarded because the claim that appellants were asserting was utterly without merit, i.e., frivolous. Respondents' argument links the award of sanctions with the malicious prosecution claim which followed, and those items are indeed related in the sense that the prosecution of a frivolous action, with malice, triggered the malicious prosecution action. Nevertheless, we find no logical linkage between the award of sanctions and Meyer's failure in 1986 to deliver the insurance coverages that he promised Butcher, such that a reasonable insured, when hit years later with sanctions, would have checked whether his insurance policy in fact contained the coverage he had requested. We conclude that the statutes are not shown to have run as a matter of law.

E. *Truck's Refusal to Defend*

Appellants argue that an insurer that wrongfully refuses to defend is liable, up to its policy limits, for the amount of any reasonable settlement made by the insured in good faith, citing *Cathay Mortuary (Wah Sang) v.*

*United Pacific Ins.* (N.D.Cal. 1984) 582 F.Supp. 650 and *Kapelus v. United Title Guaranty Co.* (1971) 15 Cal.App.3d 648 [93 Cal.Rptr. 278]. Appellants also contend that where the breach of the duty to defend is unreasonable, tort remedies are available under *Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825 [61 Cal.Rptr.2d 909] (insurer tortiously breaching duty to defend, which proximately causes insured to suffer default judgment, is liable for the default judgment).

Appellants did not move for summary adjudication of these issues in the trial court; these issues are not before us at this time; and we decline to address them.

## III

### DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion. Appellants shall recover their costs.

Vogel (C. S.), P. J., and Curry, J., concurred.

Respondents' petitions for review by the Supreme court were denied May 10, 2000.