Filed 6/6/14  Sullivan's Stone Factory v. Downey, Cavadias & Deane CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SULLIVAN'S STONE FACTORY, INC., | |
| Plaintiff and Appellant, | E054256 |
| v. | (Super.Ct.No. INC067430) |
| DOWNEY, CAVADIAS & DEANE, INC. et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge.

Affirmed.

Chadwick J. Bradbury for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Arthur K. Cunningham, Jeffry A. Miller,

Matthew B. Stucky, and Arezoo Jamshidi for Defendants and Respondents.

Plaintiff Sullivan's Stone Factory, Inc. (Sullivan) purchased all of the assets of an

entity called Cortima Co. (Cortima).  It also hired many former employees of Cortima.

1

Under these circumstances, when Sullivan applied for worker's compensation insurance, California law required that Sullivan be treated as if it were Cortima. In particular, Sullivan was subject to Cortima's "experience modification" — a multiplier that increases or decreases the premium an employer must pay, depending on whether its claims history is worse or better than that of other employers in the same industry.

Sullivan asked defendant Marco Martinez, an employee of defendant Downey, Cavadias & Deane, Inc. (collectively Downey), to help it obtain worker's compensation insurance. On Sullivan's behalf, Martinez submitted an insurance application in which he stated correctly that Sullivan had acquired Cortima's operation but stated incorrectly that fewer than half of Sullivan's employees were former Cortima employees.

Based on these representations, the State Compensation Insurance Fund (SCIF) issued a policy to Sullivan and estimated the annual premium at less than $50,000. A month or so later, however, the Workers' Compensation Insurance Rating Bureau (Bureau) notified SCIF that Sullivan was subject to Cortima's experience modification because actually, *more* than half of its employees were former employees of Cortima. This ultimately increased Sullivan's premium by 57 percent.

In this action, Sullivan seeks to hold Downey liable for failing to disclose that Sullivan would be subject to Cortima's experience modification. The trial court granted summary judgment against Sullivan and in favor of Downey because Downey had proven that it simply did not know that Sullivan would be subject to Cortima's experience modification.

Sullivan appeals.  We find no error.  Hence, we will affirm.

I

LEGAL BACKGROUND

The Bureau uses data submitted by workers' compensation insurers "to develop an 'experience modification factor' for each qualified employer.  That factor plays a part in calculating the employer's workers' compensation insurance premium."  (*Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1501.)

The Bureau has adopted an "Experience Rating Plan," set forth in administrative regulations at California Code of Regulations, title 10, section 2353.1.[1]  Every workers' compensation insurer must adhere to the Bureau's experience rating plan.  (Ins. Code, § 11734, subd. (a).)

The Bureau's experience rating plan requires that past experience must be used in future experience ratings, unless there has been *both* a "material change in ownership" *and* a "material change in operations or employees . . . ."

---

[1]  In the trial court, SCIF requested judicial notice of the Bureau's experience rating plan.  Downey joined in SCIF's request.  However, Downey failed to include SCIF's request in the appellate record in this case.

Fortunately, SCIF's request for judicial notice, including the relevant version of the experience rating plan, is in the appellate record in the related appeal, *Sullivan's Stone Factory, Inc. v. State Compensation Insurance Fund*, No. E054813.  (See fn. 5, *post*.)  Rather than order augmentation of the record, we hereby take judicial notice of the Bureau's experience rating plan.

3

A material change in ownership occurs when all or most of the assets of one entity are sold, transferred, or conveyed to another entity. It is undisputed that, in this case, there was a material change of ownership. It is equally undisputed that there was *not* a material change in operations. Accordingly, Sullivan was subject to Cortima's experience modification, unless there had been a material change in employees.

Subject to exceptions not relevant here, "a change in employees is material only if:

"(a) a majority of the employees who conduct the operations . . . for any period of time within the first ninety (90) days following the material change in ownership were not employed to conduct such operations for any period of time within the ninety (90) days immediately preceding the material change in ownership, and

"(b) a majority of the payroll earned by the employees who conduct the operations . . . for any period of time within the first ninety (90) days following the material change in ownership was earned by employees who were not were not employed to conduct such operations for any period of time within the ninety (90) days immediately preceding the material change in ownership."

II

FACTUAL BACKGROUND

The following facts are taken from the evidence offered in connection with Downey's motion for summary judgment,[2] supplemented by those allegations of the

_____

[2] Both sides repeatedly cite evidence introduced in connection with *SCIF's* motion for summary judgment. However, SCIF and Downey brought separate motions; Sullivan filed separate oppositions; and, with minor exceptions, the parties offered

*[footnote continued on next page]*

complaint that have not been controverted by the evidence. (See *Brown v. Bleiberg* (1982) 32 Cal.3d 426, 438 [on motion for summary judgment, court may consider allegations of the complaint to the extent that they are not controverted by affidavits on either side]; *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1211 [party seeking summary judgment can rely on admissions of material fact made in opposing party's pleadings].)

Renée Davies worked for Cortima as its general manager. She was not responsible for buying Cortima's worker's compensation insurance. However, she was generally aware that Cortima had an experience modification based on its on-the-job injuries in the previous three years, and that this increased its worker's compensation insurance premiums.

In December 2004, Sullivan purchased Cortima's assets. It also hired some of Cortima's employees, including Davies, whom it hired as its general manager.

Downey is an insurance broker. Martinez was an employee of Downey. On January 20, 2005, Davies asked Martinez to help Sullivan obtain worker's compensation insurance. Martinez had not been Cortima's worker's compensation insurance agent. He did not know anything about Cortima's claims history; he did not know that Cortima was

---

*[footnote continued from previous page]*
separate evidence in connection with each motion. We therefore limit our consideration to the evidence introduced in connection with Downey's motion.

5

subject to an experience modification. Martinez also did not have actual knowledge that Sullivan would be subject to Cortima's experience modification.

On Sullivan's behalf, Martinez filled out and signed an application for worker's compensation insurance; he submitted it to SCIF on January 24, 2005.

The form asked, "Was this operation all or part of an existing business that was purchased or acquired?" Martinez checked "Yes."

The form also asked, "Were more than 50% of the current employees hired since the acquisition?" Martinez checked "Yes."

Finally, the form asked, "Are those new employees earning more than 50% of the payroll?" Again, Martinez checked "Yes."

On January 27, 2005, SCIF notified Martinez that it could not provide a quote until, among other things, it received a completed "Notification of Change of Ownership" form. Martinez filled out the form and returned it to SCIF on January 31, 2005. In it, he explained that Sullivan had purchased Cortima's "physical assets" but not Cortima's "existing business operations." He also stated that the purchase was an "[a]ssets [o]nly" transaction.

The form asked whether 50 percent or more of Cortima's employees also worked for Sullivan. Martinez wrote, "N/A."[3]

---

[3] Sullivan claims that Martinez "made no inquiries to anyone at Sullivan[] regarding any of the information on the . . . [f]orm . . . ." The cited portion of the record does not support this claim. The record simply does not reveal whether Martinez did or did not discuss the information with Sullivan.

6

On or about February 17, 2005, SCIF sent Martinez a summary of proposed policy terms, including an "[e]stimated [a]nnual [p]remium" of $48,682. (Capitalization altered.) Sullivan signed the summary and accepted the terms.

On March 9, 2005, SCIF issued a worker's compensation policy to Sullivan. Once again, it listed an "[e]stimated [a]nnual [p]remium" of $48,682. It also stated, "The premium shown . . . is an estimate. The final premium will be determined after this policy ends by using the actual premium basis and the proper classifications, rates and rating plans that lawfully apply to the business and work covered by this policy."

On March 10, 2005, SCIF forwarded Sullivan's "Notification of Change of Ownership" form to the Bureau.

On March 24, 2005, the Bureau notified SCIF that Sullivan was subject to Cortima's experience modification. It explained: "This conclusion is based on our determination that a majority of the employees conducting the operations purchased by [Sullivan] during the ninety (90) days after the sale were also employed by Cortima . . . during the ninety (90) days before the sale."[4]

On April 12, 2005, SCIF passed along the news to Sullivan that it was subject to Cortima's experience modification. Martinez was surprised; he thought this was a mistake. Ultimately, being subject to Cortima's experience modification increased Sullivan's premiums by 57 percent.

---

[4] The record does not indicate how the Bureau discovered this.

7

III

PROCEDURAL BACKGROUND

The operative complaint asserted causes of action against Downey[5] for fraud and deceit.[6]

Downey moved for summary judgment on the grounds that it did not know that Sullivan would be subject to Cortima's experience modification and that it had no intent to deceive. The trial court granted the motion and entered judgment accordingly.[7]

IV

DOWNEY'S LIABILITY FOR FRAUD AND DECEIT

Sullivan contends that there was at least a triable issue as to whether Downey was liable for fraud and deceit.

The complaint alleges that Downey knew that Sullivan would be subject to Cortima's experience modification, but intentionally concealed this information.

---

[5] SCIF was also named as a defendant. It brought a separate motion for summary judgment, which the trial court granted. That ruling is the subject of a separate appeal. (*Sullivan's Stone Factory, Inc. v. State Compensation Insurance Fund*, No. E054813.)

[6] The trial court sustained demurrers to causes of action against Downey for concealment in violation of Insurance Code sections 330 through 339 and for negligent nondisclosure.

[7] Neither side has asked that a reporter's transcript of the hearing on the motion for summary judgment be included in the appellate record. We therefore presume that nothing that occurred at the hearing was material to the issues raised on appeal. (Cal. Rules of Court, rules 8.120(b), 8.163.)

"The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. [Citation.]" (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.)

Here, the alleged fraud consisted of a nondisclosure. As Sullivan concedes, "to establish fraud through nondisclosure or concealment of facts, it is necessary to show the defendant 'was under a legal duty to disclose them.' [Citation.]" (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 845.)

A duty of disclosure may arise out of a disparity in knowledge. "This principle applies, not just to insurance, but to all business transactions, and it is recognized in section 551 of the Restatement Second of Torts, which provides: '(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question. [¶] (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, [¶] . . . [¶] (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a

9

disclosure of those facts.'"  (*Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1464-1465.)

Downey, however, affirmatively proved that it did *not* know that Sullivan would be subject to Cortima's experience modification.  Sullivan listed the following fact as "[u]ndisputed":  "Martinez did not misstate any fact to Sullivan[], and he did not fail to disclose any fact known to him concerning the worker's compensation experience modification or issues regarding premiums."  (Capitalization altered.)  The evidence shows, at most, that Martinez knew that Sullivan had purchased Cortima's assets.[8] However, there was no evidence that he knew the effect that this could have on Sullivan's experience modification.  There also is no evidence that he knew that more than half of Sullivan's employees were former Cortima's employees.  Thus, his testimony that he did not know that Sullivan would be subject to Cortima's experience modification was uncontradicted.  When SCIF informed him of this, he was as surprised as anybody. Davies even admitted that Martinez did not seem to know why Cortima's experience modification was being applied to Sullivan.[9]

---

[8]     Sullivan claims that Davies told Martinez that Sullivan had purchased Cortima's assets.  The cited portions of the record show that she told him that Cortima had sold its assets; they do not show that she told him that Cortima had sold its assets *to Sullivan*.

[9]     Sullivan did not allege a cause of action for professional negligence. Accordingly, we have no occasion to consider whether such a cause of action might be viable.  (*Beutz v. County of Riverside* (2010) 184 Cal.App.4th 1516, 1534 ["[T]he pleadings delimit the issues to be considered on a motion for summary judgment, and a plaintiff . . . cannot bring up new, unpleaded issues in his moving or opposing papers [citation] . . . ."] [Fourth Dist., Div. Two].)

In its brief, Sullivan implicitly concedes that Downey lacked actual knowledge. It argues that Martinez failed to "conduct any research o[r] inquiry" into the validity of the information that he submitted to SCIF. It also argues that, based on the information he did have, including that Sullivan's address was the same as Cortima's, he should have conducted a "further investigation." However, Sullivan does not cite any authority for the proposition that a fraud cause of action can be based on constructive knowledge.

Sullivan also alleged that Downey had a statutory duty of disclosure under Insurance Code section 330[10] and 332.[11] These statutes, however, do not apply to Downey; they apply only to the parties to a policy of insurance. In any event, once again, these statutes impose a duty of disclosure only as to facts that a party actually knows.[12]

Finally, a duty of disclosure may arise from a fiduciary relationship. "An agent has a fiduciary duty to the principal to disclose all information *in the agent's possession* relevant to the subject matter of the agency. [Citation.]" (*L. Byron Culver & Associates v. Jaoudi Industrial & Trading Corp.* (1991) 1 Cal.App.4th 300, 304, italics added.)

_____

[10] Insurance Code section 330 provides: "Neglect to communicate that which a party *knows*, and ought to communicate, is concealment." (Italics added.)

[11] Insurance Code section 332 provides: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts *within his knowledge* which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." (Italics added.)

[12] Sullivan also cited the Unfair Insurance Practices Act (UIPA), Insurance Code section 790.03. This statute can be enforced only by the Insurance Commissioner; "[p]rivate UIPA actions are absolutely barred . . . . [Citations.]" (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 384.)

Sullivan does not argue that a fiduciary has a duty to disclose information that is *not* in the agent's possession (nor that a fiduciary has a duty to investigate or to inquire before making a disclosure — which is basically the same thing). Indeed, in the trial court, Sullivan did not argue that Downey was a fiduciary at all; quite the contrary, it noted that it was unclear whether an insurance agent is a fiduciary. Thus, Sullivan has forfeited any contention that being a fiduciary imposed on Downey a duty to disclose matters of which it had no actual knowledge.

We therefore conclude that the trial court properly granted summary judgment.

V

DISPOSITION

The judgment is affirmed. Downey is awarded costs on appeal against Sullivan.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

12